[Filed December 1, 1891.]

## HIRAM SIMPKINS v. BENJAMIN WINDSOR.

EVIDENCE — ERASURES OR ALTERATIONS IN WRITTEN INSTRUMENT.— Before a writing can be used in evidence, the party offering the same must account for apparent alterations or erasures therein.

BONA FIDES — PLEADING.— In order to defeat an equity, the fact that a defendant purchased land in good faith must be pleaded in his answer.

POSSESSION — NOTICE OF TITLE.— Open, exclusive, and actual possession of land is notice to all the world of the title under which the occupant holds, whether legal or equitable.

Polk county: R. P. BOISE, Judge.

Plaintiff appeals. Reversed.

The respondent, Benjamin Windsor, commenced an action of ejectment against the appellant to recover an undivided interest in the land in controversy. The appellant at the time of filing his answer in that action filed his cross-bill under section 381, Hill's Code.

The facts about which there is no controversy are briefly these: That George K. Gay and his wife acquired a donation land claim of six hundred and forty acres in Polk county, Oregon; that thereafter Mrs. Gay died intestate in said Polk county, leaving seven children surviving her as her only heirs at law, and also her husband, George K. Gay, survived her; that among her children who survived her was Louisa Gay, who afterwards intermarried with one Gervais, and, upon his death, with one Cave, whose wife she now is; that prior to the twelfth day of November, 1881, L. C. Forrest had acquired by purchase five-sevenths of said wife's half of said donation land claim, being the interest of all the heirs of Mrs. Gay except Henry and Louisa; that at said time George K. Gay was tenant by curtesy of said entire tract, and was indebted to said Forrest in the sum of from three hundred to four hundred dollars; that about said time, it was agreed among Forrest, George K. Gay, and Henry and Louisa that said land should be amicably partitioned, that is, that Forrest would

convey to Henry and Louisa all his interest in a certain described one hundred acres of said tract, and that, in consideration thereof, Henry and Louisa and the said George K. Gay, would convey to Forrest all their interest in the remaining two hundred and twenty acres, and that Forrest should also cancel his claim against said George K. Gay as a part of the consideration; that one Dawne was employed by the parties to go from Salem to their residence in Polk county for the purpose of preparing the necessary deeds to carry into effect the agreements of the parties, and that Dawne did go and did prepare the deed which has given rise to this controversy.

The cause was referred and the evidence duly taken, from which the court below made findings of fact and law favorable to the respondent, from which this appeal is taken.

*Bonham & Holmes,* for Appellant.

This is not a case to impeach an instrument of writing, but rather to prove that the writing exhibited is in fact different from what was intended, and also different from what it was supposed to be. (Kerr Fraud and Mistake, 49; *Vorley* v. *Cook,* 1 Giff. 234; *Ogilvrie* v. *Jefferson,* 2 Giff. 352; Devlin Deeds, § 119; *Courtright* v. *Courtright,* 63 Ia. 356.)

Defendant purchased the land with full notice of plaintiff's claim and rights. (*Stannis* v. *Nicholson,* 2 Or. 332; *Bohlman* v. *Coffin,* 4 Or. 313; *Maner* v. *Young,* 1 W. T. 454.)

*D'Arcy & Bingham,* for Respondent.

Fraud or mistakes must be established by evidence so clear and strong as to produce satisfactory conviction; slight suspicions, vague presumptions, bare possibilities, will not do; yet the evidence need not be positive. (*Greer* v. *Caldwell,* 14 Ga. 207; 58 Am. Dec. 553; *Nichols* v. *Patten,* 18 Me. 231; 36 Am. Dec. 713; *Babbitt* v. *Dolten,* 14 Fed. Rep. 19; *Keel* v. *Levy,* 19 Or. 450; Bigelow Fraud, 123; 8 Am. & Eng. Enc. Law, 654.)

Our court has applied the same rule with reference to correcting mistakes in written instruments. (*Smith* v. *Butler*, 11 Or. 46; *Remillard* v. *Prescott*, 8 Or. 37.)

A *bona fide* purchaser without notice of a fraud or mistake is protected. (2 Pom. Eq. Jur. § 918; *Dugan* v. *Vattier*, 3 Blackf. 245; 25 Am. Dec. 105; Bigelow Fraud, 130–132.)

Strahan, C. J.—The real controversy in this case is, whether or not the name of Mary A. Gay, fourth wife of George K. Gay, was fraudulently and surreptitiously inserted in L. C. Forrest's deed of November 12, 1881, to Henry Gay and Louisa Gervais as a grantee therein. This is the only question in the case, and the only point about which there is any contention. That deed is before the court, and has been carefully inspected and examined in the light of what appears upon its face and the other evidence in the case. Mrs. Cave, formerly Louisa Gervais, and Henry S. Gay were witnesses in this case and parties to the deed. They testify in effect as to the agreement they made with Forrest about the partition of their mother's half of her donation land claim, and of the procuring of Dawne to act as scrivener; that on the day the deed was prepared, and at the very time, they refused to acquiesce in a deed he had prepared containing another name as grantee beside their own. Forrest's deed shows upon its face that the name of George K. Gay was named as first grantee therein, followed by the names of Henry S. Gay and Louisa Gervais, in the order named. The name of George K. Gay has two heavy penstrokes through it, but it is left plainly legible; and then, after the name of Louisa Gervais, in a very small space in the blank, are inserted "& Mary A. Gay." These words are apparently in the same hand-writing; but the ink is so entirely dissimilar, that the conclusion is irresistible that they were written at some other time than when the deed was written or signed. The same remarks are applicable to the *habendum* clause of the deed, where the name of Mary A. Gay appears. The name here is before that of

the other grantees named. There is sufficient appearing here to show that George K. Gay's name was first written, and then the words "George K." were erased and "Mary A." written instead in the same ink with which her name is written above. In none of the other papers executed at the same time between the parties was this pale ink used. Forrest's name is signed to this deed in a slightly different ink from the body of the deed, and so is the name of Hendricks as a witness; but there is not a mark or pen-stroke about these deeds anywhere made with the same ink used in writing the name Mary A. Gay. We conclude, then, that this name was inserted in the deed at some time after its execution, because we are satisfied from the evidence it was not done before nor at the time. George K. Gay's name was no doubt first in the deed. That proving unsatisfactory to Henry and Louisa, it was stricken out and the other inserted at some time before the deed was recorded.

Mary A. Gay had no right to or interest in this land. She was the fourth wife of George K. Gay, and there is nothing whatever shown entitling her to any part of it or interest in it. George K. Gay retained his life estate as tenant by the curtesy in it, and continued to live on it until his death; and he received from L. C. Forrest from three hundred dollars to four hundred dollars for his curtesy in the two hundred and twenty acres, which was probably as much as it was worth. The evidence does not disclose his age, but presumably he was well advanced in years. He was living with his fourth wife, and was the father of seven children, all of whom were of age when the deeds were executed except Henry S., who was then in his twentieth year. These facts would indicate he was well advanced in years, which of course detracted from the value of his life estate.

Having reached the result that this deed was altered, or at least appears to have been altered, after its execution, the duty of explaining the alteration or appearance of alteration rested on the party claiming under such deed. Section

XXI OR.—25.

788, Hill's Code, provides: "The party producing a writing as genuine, which has been altered, or appears to have been altered, after its execution or making, in a part material to the question in dispute, shall account for the appearance or alteration." And after enumerating in what manner the appearance or alteration may be explained, the section says: "If he do that, he may give the writing in evidence, but not otherwise." The defendant could not use this deed in evidence without first explaining the appearances already referred to, which he did not in any manner attempt to do.

The claim mentioned upon the argument, that the defendant is a *bona fide* purchaser for value of said land, is not in this case. We have several times held that such matter is defensive in its nature, and to defeat an equity, it must be pleaded in the answer. (*Wood* v. *Rayburn*, 18 Or. 1; *Weber* v. *Rothchild*, 15 Or. 385; 3 Am. St. Rep. 162; *Hyland* v. *Hyland*, 19 Or. 51.)

Counsel for respondent argued that the appellant could not maintain this suit because fraud is not assignable; but that question is not involved here. The instrument under which defendant claims was surreptitiously altered, or appears to have been altered, after its execution. This act of altering the instrument was a forgery, and no title can be predicated upon or gained by such an act. It is true, the defendant is in no way connected with that act, or responsible for it, but he is so unfortunate as to be in such condition that he deraigns title through it. He, therefore, suffers through another's wrong. He might have avoided this by refusing to buy after he knew Simpkins was in possession claiming title. Open and exclusive actual possession of land is of itself sufficient notice to the whole world of the title under which the occupant holds; if it be a latent equity, it is notice of such equity.

The decree appealed from will be reversed, and a decree entered here in favor of the appellant.