## NICKUM v. GASTON.
[42 Pac. 130.]

1. ESTOPPEL — PAYMENT OF TAXES BEFORE SALE.— One in possession of land is not estopped by lapse of time from defeating a tax title by showing that the taxes for which the land was sold were in fact paid before sale.

2. EVIDENCE TO SHOW PAYMENT OF TAX.— Parol or other competent evidence is admissible to show payment of a tax to defeat a tax title based on a subsequent sale for the alleged nonpayment of such tax.

3. ALTERED WRITING AS EVIDENCE — CODE, § 788.— Where it is shown, even after an instrument has been admitted over objection of the other party, that the alteration appearing therein was not made after the execution thereof, section 788 of Hill's Code, providing that the party shall account for an alteration made after the execution of the instrument, does not apply.

4. WHO MAY PAY TAXES.— The payment of a tax on land by a person claiming an interest therein, and its acceptance by the proper collect-ing officer, precludes a sale for the tax, whether the claim of interest was well founded or not.

5. EVIDENCE OF PAYMENT OF TAX — QUESTION FOR JURY.— Defendant's statement that she had paid the tax levied on land before the sale

thereof, together with a receipt indicating that she had done so, was sufficient evidence to require the court to submit to the jury the question whether the tax really had been paid.

6. JUDGMENT AS AN ESTOPPEL.— A judgment roll in a former action showing judgment in favor of a person claiming under a tax title, accompanied with evidence that said action was brought at the request of defendant against said person, will not estop defendant from defeating said title by showing that the taxes for which the land was sold were paid by defendant before the sale, where it did not appear that the question of payment of said taxes was raised in said former action.

APPEAL from Multnomah: E. D. SHATTUCK, Judge.

This action was commenced in October, eighteen hundred and ninety-one, by J. M. Nickum against Tiny Gaston to recover possession of the northeast quarter of section twenty, township one south, range two east, in Multnomah County. It has been in this court before on appeal from a judgment awarding the land to plaintiff: *Nickum* v. *Gaston,* 24 Or. 391. On a second trial the verdict and judgment were for defendant, and we now have the case on plaintiff's appeal. The record is voluminous, and contains many assignments of error, but it is thought unnecessary to encumber the opinion with an extensive statement of the facts or the numerous errors assigned and relied upon for a reversal of the judgment, as the result, in our opinion, must depend upon the solution of the questions presented by one branch of the case. The pleadings are in the usual form for such actions. Plaintiff alleges title and right of possession. This the answer denies, and, as a further defense, the defendant pleads title within herself, and sets up the statute of limitations as a bar to plaintiff's action, which defense is controverted by plaintiff's reply. The contested questions thus presented are two-fold: *first,* was plaintiff the owner of the legal title? and, *second,* if so, was his right of ac-

tion barred as claimed? The question of adverse pos-
session was, of course, unimportant in the absence of
proof that plaintiff was the holder of the legal title,
for he must recover, if at all, upon the strength of
his own title, and not upon the weakness of that of his
adversary. To maintain the issues on his part, and
prove his title, the plaintiff gave in evidence a tax
deed from the sheriff of Multnomah County to one
George W. Brown, dated July first, eighteen hundred
and seventy-three, and recorded July fifth, eighteen
hundred and seventy-three, purporting to convey to
Brown the property in controversy under a sale for
delinquent taxes levied upon it for the year eighteen
hundred and seventy, and other conveyances showing
a complete chain of title from Brown to himself. To
defeat the title thus established the defendant under-
took to show—*first*, that before the sale to Brown
she paid the taxes for which the land was sold; and,
*second*, that she and her predecessors in interest had
been in the adverse possession of the land for more
than ten years prior to the commencement of the ac-
tion. These two questions, among others, were sub-
mitted to the jury for special findings, and were both
determined in favor of the defendant, and a general
verdict rendered in her favor.          REVERSED.

For appellant there was a brief by *Messrs. Dolph,
Mallory and Simon*, and *Mitchell, Tanner and Mitchell*, with
oral arguments by *Messrs. Albert H. Tanner* and *Joseph
Simon*.

For respondent there were briefs and oral argu-
ments by *Messrs. Parish L. Willis* and *Seneca Smith*.

Opinion by MR. CHIEF JUSTICE BEAN.

Unless the record shows error affecting the question whether in fact Miss Gaston paid the taxes on this land before it was sold, the judgment must be affirmed, although the court may have erred in other respects. Plaintiff's title rested wholly upon the tax deed to Brown, and if there was competent evidence given on the trial from which the jury found that the tax had been paid prior to the sale, and there was no error in admitting testimony on this question, or in instructing the jury in relation thereto, the judgment cannot be disturbed; for, if the taxes had been paid prior to the sale, plaintiff's title necessarily failed, and therefore the other questions in the case are immaterial. When taxes are once paid, the lien of the state therefor is discharged, and a subsequent sale of the land for such taxes, as Mr. Black says, "is without color of authority and void. In other words, actual delinquency is a condition precedent to the right to sell any realty under a tax assessment." So that, if defendant had paid the taxes under which the sale was made, the lien was discharged, and the purchaser at the tax sale obtained no title by his purchase, and, of course, could convey none to his grantees: Hill's Code, § 2843; Black on Tax Titles, § 156; 2 Blackwell on Tax Titles, § 821; Cooley on Taxation, 450. We proceed, then, to examine the alleged errors in the record relating to this question. The defendant, to show that she had paid the taxes for eighteen hundred and seventy, gave in evidence the tax roll for that year, from which it appeared that the fractional southeast quarter of section twenty was assessed to her, and the northeast quarter thereof, being the property in controversy, to unknown owners. She also gave oral evidence tending to show that at the date of the assessment she did not own or claim to own the property assessed in

her name, but did claim to own the said northeast quarter, which was assessed to unknown owners, and that she owned no other land in that section. She then called Joseph Gaston as a witness, who related his connection with the matter in issue as follows: ''I am the father and agent of the defendant; prior to eighteen hundred and seventy I purchased the land in controversy of Hiram Smith for my daughter. I paid the tax on the land for the year eighteen hundred and seventy to the sheriff of Multnomah County. I went to the sheriff's office as usual to pay the taxes that were owing. That is all the taxes I owed on the land in question. I found the land assessed to my daughter, as it had been agreed between me and Mr. Smith before; that was the first year it had been assessed to my daughter. I paid the taxes when we got the receipt. It had been paid before by Mr. Smith; it was assessed in his name. Mr. Smith had come to me with his receipt; I had to pay the money over to him. I have the receipt which I took for the taxes for eighteen hundred and seventy.'' The witness then produced a receipt signed by the sheriff of Multnomah County, dated January thirtieth, eighteen hundred and seventy-one, which purports on its face to be for the taxes assessed on the land in controversy for the year eighteen hundred and seventy, which was offered in evidence. To the admission of this receipt the plaintiff objected upon the ground that it was immaterial and irrelevant, and because it appeared upon its face to have been altered or mutilated, and such alteration had not been explained. The alteration, if any, was made by erasing some letter, and inserting the letter N in the description of the property in the margin of the receipt. The objection was overruled by the court, and the receipt was admitted in evidence,

to which the plaintiff excepted. The witness Gaston was then asked to state what, if anything, he knew about the supposed alteration in the receipt, and replied: "I do not recollect anything definite about that. It evidently had been a mistake of some sort, and at the time of making the receipt it was corrected; I know the receipt has never been altered since I received it. It has been laid away in an old iron box of papers for over twenty-two years. Before the last trial, I took a search through all my papers to find tax receipts to this land, and I found this receipt. I did not notice then that there had been any alteration in it; I did not notice that until the morning of the trial. We were examining it, and I saw the alteration in the receipt. I knew the proper description of the land independent of what might appear on the assessor's books. Am satisfied that I did not look at the assessment roll at the time I paid the taxes. Did not have the land assessed myself—did not have it put in the books." This and all evidence in respect to the payment of the tax for eighteen hundred and seventy was admitted over the objection and exception of the plaintiff.

1. It is claimed that the right to show that the tax was paid before the sale was barred by lapse of time. We are unable to concur in this position. It is admitted that defendant has been in the possession and enjoyment of the land in controversy at least since the spring of eighteen hundred and eighty-two, claiming title. Under such circumstances she certainly could safely rest upon her possession until her title was assailed by some one claiming under the tax deed, and then show, if the facts were with her, that it was void because the tax had in fact been paid.

No presumption can be built up in aid of the tax title by the delay of the holder in asserting his claim, nor can such delay deprive the owner of the property who is in possession of the right to question the validity of the deed when it is sought to establish title under it. That one who claims to have title to property by a tax deed may lie by, without asserting it, a sufficient length of time to estop the owner in possession from proving, when his title is attacked, that the tax was in fact paid prior to the sale, is a doctrine so manifestly unsound that time need not be wasted in attempting to make it appear more so.

2. There is nothing in the position that the payment of the tax could not be shown by parol. The payment may be proved by any competent evidence sufficient to satisfy the jury: Black on Tax Titles, § 159; Blackwell on Tax Titles, § 834; Cooley on Taxation, 452; *Adams* v. *Beale,* 19 Iowa, 61; *Hammond* v. *Hannin,* 21 Mich. 374 (40 Am. Rep. 490); *Davis* v. *Hare,* 32 Ark. 386; *McDonough* v. *Jefferson County,* 79 Texas, 535 (15 S. W. 490). Nor is the taxpayer responsible for the errors or mistakes of the sheriff or taxing officer, or the manner in which he keeps his records or accounts. If, in fact, he pays the tax, the demands of the government are discharged; it no longer has the right to sell his property, and it is immaterial whether a subsequent sale transpires through the mistake of the officer, or in positive disregard of the fact of payment. In either case the purchaser takes no title: Black on Tax Titles, § 162; Blackwell on Tax Titles, §§ 830, 831.

3. It is claimed the tax receipt admitted in evidence was not competent because it had been altered or changed. The statute, section 788 of Hill's Code,

provides that "The party producing a writing as genuine which has been altered, or appears to have been altered, after its execution or making, in a part material to the question in dispute, shall account for the appearance or alteration," etc. Now, it does not appear that the receipt had been altered or changed after its execution or delivery to the taxpayer. Indeed, the only evidence on that subject is the evidence of Gaston, who said he did not recollect anything definite about it, but it was evidently a mistake of some sort, and at the time of making the receipt it was corrected, but "I know the receipt has never been altered since I received it." True, this evidence was given after the receipt was formally admitted, but it was sufficient to cure the objection to its admission on account of its appearance. Its value as evidence, therefore, became a question for the jury.

4.  It is next claimed that the defendant did not show sufficient interest in the property to entitle her to pay the tax. The evidence shows that she claimed to have some interest, but, whether this claim was well-founded or not, the right of the state to sell the land ceased when the tax was paid by her and accepted by the proper collecting officer. The power of sale is limited to coercing payment of the tax, and as soon as it is paid the power ceases, and it is generally held to be immaterial by whom the payment was made, if it was in fact accepted by the officers authorized to collect it: Blackwell on Tax Titles, § 826; Black on Tax Titles, § 161; Cooley on Taxation, 450; *Iowa Railroad Land Company* v. *Guthrie*, 53 Iowa, 386 (5 N. W. 519).

5.  It is also claimed that the evidence was insufficient to support the finding that the tax had been

paid. The weight and sufficiency of the evidence was. for the jury and not the court. In our opinion it tended to show that the defendant had paid the tax prior to the sale. Gaston so testified, and the receipt produced by him so indicated. As we have already said, the defendant is not bound by the condition of the assessment roll or the fact that the sheriff may have applied the money paid by her to the payment of the tax assessed against other property: Blackwell on Tax Titles, § 831. The ultimate fact to be determined in the case was whether the defendant actually paid the tax upon the property in controversy. If so, the right to sell ceased, and the purchaser took no title. This was a question for the jury under the evidence, and we think was properly submitted to them.

6. To defeat defendant's right to show that the tax had been paid, plaintiff offered in evidence, as an estoppel, a judgment rendered in favor of James A. Bennett, and Laura Bennett, the successors of Brown, who was the purchaser at the tax sale, adjudging them to be the owners in fee simple of the property in controversy, rendered in an action brought by one Hannah M. Smith to recover possession thereof, in which action the Bennetts set up the tax title to Brown as a defense, accompanied with an offer to show that the action was instituted at the request of defendant. This evidence was, we think, properly excluded, if for no other reason because it does not appear, and no offer was made to show, that the question of payment of the tax was submitted to or passed upon by the court, or became at all material to the determination of the case. For aught that appears the plaintiff in that action may have failed because of the weakness of her own title, and the defendants may not have

been called upon to make a defense, and so the validity of the tax deed not be called in question. These are all the alleged errors in the record affecting the question concerning the payment of the tax, and, having concluded that none of them are well taken, we are constrained to affirm the judgment, and it is so ordered.　　　　　　　　　　　　　AFFIRMED.