Submitted on briefs September 29, reversed October 19, 1915.

## FARMERS' STATE BANK *v.* WEST.*

(152 Pac. 238.)

**Bills and Notes—Bona Fide Purchaser—Evidence.**

1. Evidence in an action on a note *held* sufficient to go to the jury on the issue whether plaintiff was a holder in due course by transfer from the payee, who obtained it from defendant by fraud.

[As to who is a *bona fide* holder of a bill or note, see notes in 9 Am. Dec. 272; 44 Am. Dec. 698.]

From Columbia; JAMES U. CAMPBELL, Judge.

In Banc.    Statement by MR. JUSTICE EAKIN.

This is an action by the Farmers' State Bank, a corporation, against Burt West to recover upon a promissory note, of which the following is a copy:

"$250.00.                        September 6, 1912.

"January 1, 1913, after date, I, we, or either of us, promise to pay to the order of self at the ―― the sum of two hundred and fifty no/100 dollars, for value received, with interest at the rate of ~~eight per cent~~ per annum until paid, together with reasonable attorney's fees in case payment is not made at maturity. The makers and indorsers hereby waive presentment, demand, protest, and notice of nonpayment, and the benefit of any law intended for the advantage or protection of the obligor.

"Address ――.    Number 932.

                                    "BURT WEST."

The complaint alleges that after the making and execution of said promissory note, and prior to said date of January 1, 1913, the said defendant, Burt West, for value and by the indorsement of his name on the back of said note, assigned and transferred it to one Emery,

---

*As to what circumstances are sufficient to put a purchaser of negotiable paper on inquiry, see notes in 29 L. R. A. (N. S.) 351; 49 L. R. A. (N. S.) 395.        REPORTER.

who immediately transferred said note to the plaintiff herein. No allegation appears in the complaint that plaintiff paid anything for said note.

The answer admits the making of the note and the delivery thereof to one Emery, but denies that the same was given for any consideration, that the plaintiff is the owner of said note, or that the same was ever assigned to it, alleging the fact to be that the plaintiff acquired said note in bad faith, with full notice of the facts and circumstances under which the same was made, and that said plaintiff bank knew, and with the exercise of reasonable care and diligence would have known, that said note was not a valid obligation, but was void for fraud in its inception, was given without any consideration, and was obtained by misrepresentation and deceit, as hereinafter stated. The answer then by proper allegations sets up that the note was given to one Emery to pay for 25 shares of stock in the Co-operative Supply Company, a corporation, doing business in the City of Portland, by means of which stock Emery represented defendant would be enabled to obtain supplies at reduced prices; that it had a stock on hand worth about $3,000,000; that Emery made many golden-hued representations as to the value of said stock and the advantages which would accrue to defendant by its purchase, agreeing to hold said note until it became due, and, if defendant was not satisfied, that his note would be returned to him; that defendant, believing and relying on said representations, made said note. He further alleges that said representations were false, in that said Co-operative Supply Company did not have a stock of $3,000,000, or any greater amount than $2,000 or $3,000; that he could not get supplies at reduced prices, or at any price, nor was the company able to earn its stock-

holders anything whatever; that it was dishonestly conducted and had failed in business, the stock being utterly valueless. These allegations were denied in the reply. On the trial the cashier of the bank testified that he knew Mr. Emery by seeing him around for a week or two, and that he was canvassing among the farmers for stock; that witness knew nothing about the Co-operative Supply Company or its officers; that he did know Emery's address, but did not think it worth while to have him indorse the note; that he knew West, but had never done business with him; that Emery told him West did not want to pay interest, so that was scratched out. He admitted he had a telephone in the bank, and West had one in his house, but asserted he had never talked with West about the note, and, so far as he knew, West did not know that the bank had it until about two weeks before the note became due. He explained that he talked with Emery about the matter a few days before he bought the note; that he bought other notes from Emery, but in none of the others was the interest erased. The defendant, Burt West, and witness Alexander Young testified to matters tending to show the misrepresentation and fraud in obtaining said note; that the note was not to be delivered until after West could investigate, and he could get it back by returning the stock at any time before January 1, 1913. This was not disputed. At the conclusion of the testimony, on motion of the plaintiff, the court directed a verdict in its favor.

Submitted on briefs without argument under the proviso of Supreme Court Rule 18: 56 Or. 622 (117 Pac. xi).    REVERSED.

For appellant there was a brief over the names of *Mr. M. E. Miller* and *Mr. Frederic H. Whitfield.*

For respondent there was a brief submitted by *Mr. William B. Dillard* and *Mr. Joseph W. Day.*

MR. JUSTICE EAKIN delivered the opinion of the court.

Section 5885, L. O. L. (Negotiable Instruments Act), declares that a holder in due course is, *inter alia,* a holder who has taken under the condition that it is complete and regular upon its face.

Section 5958 provides:

"Any alteration which changes * * the sum payable, either * * principal or interest, * * is a material alteration."

In *Mahaiwe Bank* v. *Douglas,* 31 Conn. 181, a case where the instrument had been changed, and the bank was claiming as an innocent holder in due course, the Supreme Court of Connecticut said:

"Any material alteration in a bill after it is complete, made without consent of the parties whose names are on it, releases them, * * whether such alteration would operate to their prejudice or not."

This court further held in this same case that, notwithstanding the erasures, unmistakable evidence of the original character of the instrument remained, and that it was amply sufficient to excite distrust and make it the duty of anyone to whom the paper was offered to inquire when, by whom, and by what authority such erasures and alterations had been made. This case is quoted with approval in *Angle* v. *Northwestern Mutual Life Ins. Co.,* 92 U. S. 340 (23 L. Ed. 556):

"A person who takes a bill which upon the face of it was dishonored cannot be allowed to claim the privileges which belong to a *bona fide* holder without notice": *Andrew* v. *Pond,* 13 Pet. 79 (10 L. Ed. 61).

"The evidence showed that the check in suit had been changed before it reached the plaintiff, and that a mere inspection of the check showed such change. There is no evidence showing that the defendant authorized or assented to the alteration, but the appellant says that he is 'a holder in due course,' and not a party to the alteration, and that, under Section 205 of the negotiable instruments law, * * he may enforce payment on the check according to its original tenor. Section 91, page 732, of the negotiable instruments law states what constitutes a holder in due course. According to that section, a holder in due course is a holder who has taken an instrument that is complete and regular on its face. This instrument was not complete and regular on its face at the time plaintiff took it. As we have stated before, a mere inspection of the instrument showed its defect, and therefore, under subdivision 41 of the negotiable instruments law, plaintiff had notice of an infirmity in the instrument at the time he took it": *Elias* v. *Whitney,* 50 Misc. Rep. 326 (98 N. Y. Supp. 667).

The alteration of the note in this action was made by authority of the defendant, but the plaintiff took it with only the explanation of Emery, whom he very slightly knew, when the alteration was vital if unauthorized. Notice may be actual or it may be inferred from facts proved. The cashier knew that Emery was selling stock in a concern of which he knew nothing to farmers in the vicinity. This would give at least an inference that he knew what was the consideration of the note. There were other circumstances, on which we will not comment as the case must go back for retrial, from which reasonable men might infer notice.

Under the facts and the law, we think there was enough in the case to have been submitted to the jury. The judgment is reversed and a new trial granted.

REVERSED.

MR. JUSTICE HARRIS concurs in the result.