Argued April 14; modified May 26; rehearing denied
June 16, 1931.

# KIRCHNER *v.* CLOSTERMANN
(299 P. 995)

*Julius Silverstone,* of Portland, for appellant.
*Robert J. O'Neil,* of Portland, for respondent.

RAND, J. This is an action against the defendant as executor of the last will and testament of John G. Kuebrich, deceased, to recover upon two promissory notes, one for $1,200 and one for $3,000, alleged to have been executed by testator in his lifetime. In a former action upon the same notes a judgment in favor of plaintiff was set aside and a new trial granted by the trial court upon the ground that the claim had not been properly verified and this ruling was affirmed in *Kirchner v. Clostermann,* 128 Or. 183 (272 P. 278). A duly verified claim based upon these notes has since been duly presented to the executor for allowance and, upon his rejection of the claim, this action was commenced. The complaint in the instant case contains all the allegations essential to a recovery upon both notes. The defense sought to be interposed by the answer was that there was no consideration for the notes and that they are forgeries. Upon the issues thus made, the cause was tried to a jury and at the close of the testimony, the court sustained defendant's motion for a

directed verdict as to the $3,000 note and overruled it as to the other. Upon the note last referred to, plaintiff had verdict and from the resultant judgment both plaintiff and defendant have appealed.

It appears from the evidence that testator came to Portland, Oregon, about 1908, and resided there until his death in October, 1925; that on March 10, 1924, he made his last will and testament by which the defendant was appointed his executor. Testator had no known heirs except possibly a sister named Anna Kuebrich, whom he had not heard from for many years and who, when he last knew of her, was a resident of Germany. By the terms of his will, he devised to plaintiff, referring to him therein as "my friend, Adolf Kirchner," a house and lot in the city of Portland, and gave and bequeathed $1,500 in money to his said sister, Anna Kuebrich, if she could be found within one year after his death and could establish by satisfactory legal proof her relationship to him. The rest, residue and remainder of his property, including said legacy to his sister if it should lapse, he gave and devised to one Christian F. Stricker, a resident of Portland, likewise referring to him in the will as "my friend."

The notes in controversy purport to bear the date of January 2, 1923, and are in terms payable to the order of plaintiff five years after date with interest at the rate of 7 per cent per annum. No indorsement of transfer or payment appears upon either thereof. The evidence shows, and it was admitted without objection, that at the time the will was made testator made the declaration that he owed no debts whatsoever and that at the time the notes are claimed to have been executed testator was in somewhat affluent circumstances. He had at the time on deposit

with the Hibernia Commercial and Savings Bank of Portland, Oregon, more than $2,500 in money and had in said bank for safekeeping over $2,000 in liberty bonds. He also had a small account with the Ladd and Tilton Bank of Portland. He was also the owner of certain real property in the city of Portland and had considerable sums of money loaned out on interest and, so far as the evidence shows, he seems to have been a man who exercised a careful and prudent management over his business affairs.

During the trial, plaintiff was a witness in his own behalf. He produced the two notes in controversy and testified that he was present and saw testator sign them and that testator thereupon delivered them to him and that, except during the time they have been in the possession of his counsel, he has been in possession of them.

Since the basis of plaintiff's appeal is the court's ruling on the $3,000 note, his evidence in respect to that note will be considered separately. His testimony is that the consideration for the $3,000 note was some slight services which he claimed to have performed for testator while visiting him on certain Sundays in helping testator repair the building in which testator was living and which other witnesses refer to as a "shack." The character or value of the services performed and the time employed are not disclosed. His testimony does show, however, that whatever services he may have performed they were not performed at the request of testator and were of but slight value and were performed gratuitously and without any expectation upon his part that he was to be compensated therefor or any intention upon the part of the testator to pay him therefor. In testifying as to the consideration for the $3,000 note, he stated that testa-

tor said he was making him a gift of the note and also compensating him for past services. Since testator is dead and the execution and delivery of the notes are denied in the answer, plaintiff's testimony should be scrutinized with great care.

After hearing the testimony in the case, the learned trial court concluded that the testimony only tended to prove a gift, by the maker of the note, of an executory promise to make a future payment of money and, therefore, was not an enforceable obligation and directed the jury to return a verdict in favor of defendant upon that particular note.

█ Plaintiff contends that this was error, basing his argument upon two grounds: First, that since the instrument is in form negotiable it is to be deemed prima facie to have been issued for a valuable consideration; and, second, that proof of services performed that were of some slight value was a sufficient consideration to support the note. It is settled law in this state that when the execution of a note is denied, there is no presumption in favor of its regularity or the fairness of the transaction, and, until its execution is shown, there is no presumption that it was delivered or based upon a sufficient consideration: *Sears v. Daly,* 43 Or. 346 (73 P. 5); *Long v. Hoedle,* 60 Or. 377 (119 P. 484, 38 L. R. A. (N. S.) 1195, Ann. Cas. 1914A, 203). In an action upon a promissory note, whether negotiable or otherwise, the burden of proving that there was no consideration for the note is on the defendant, but if it appears from the testimony of the holder of the note that it was not issued for a valuable consideration, that would defeat the note unless the note was negotiable in form and the person suing thereon was a holder in due course, and where, as here, the plaintiff, who was an immediate party to the note,

after proffering the note, proved that it was delivered to him by the maker as a gift, the action cannot be maintained, for the rule in such case is "the gift of the maker's own note is the delivery of a promise only, and not of the thing promised, and the gift therefore fails": Kent's Com., 438; *Harris v. Clarke,* 3 Comst. Rep. 93; *Hamor v. Moore's Adm'r.,* 8 Ohio St. 239. Pomeroy states the rule and the reason therefor as follows:

"* * * Things in action, on the other hand, in which the donor himself is the debtor party, cannot be the subject-matter of a valid gift. The reason is, that, whatever be their form, these gifts would amount to nothing more than the donor's own naked executory promise to pay at some further day, without any consideration to support it; and such a voluntary promise cannot be enforced against the donor nor against his executors or administrators": 3 Pomeroy's Eq. Jurisprudence (3d Ed.), section 1148.

■■ Our statute provides that in the case of a negotiable instrument value is any consideration sufficient to support a simple contract and that an antecedent or preexisting debt constitutes value: Section 57-202, Oregon Code 1930. A negotiable instrument, therefore, is sufficiently supported by an agreement to receive it in discharge of an antecedent debt, but past services, when rendered under such circumstances as to create no legal obligation, are not a sufficient consideration to support a subsequent promise: *In re Fisher's Estate,* 128 Or. 415 (274 P. 1098).

There is great conflict in the testimony upon the question of whether these notes are genuine or forgeries but, regardless of what the testimony may show in respect to this matter, we are of the opinion that the $3,000 note was not supported by a valuable con-

sideration and that the action of the court in withdrawing this note from the consideration of the jury was proper.

In respect to the $1,200 note, we think that the court erred in failing to instruct the jury upon the law applicable to a material alteration appearing upon the face of that note. On its face it shows that the date of the note has been altered. Section 57-806, Oregon Code 1930, provides:

"Where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided, except as against a party who has himself made, authorized or assented to the alteration, and subsequent indorsers; but when an instrument has been materially altered and is in the hands of a holder in due course, not a party to the alteration, he may enforce payment thereof according to its original tenor."

The next section, among other things, provides that any alteration which changes the date of a negotiable instrument is a material alteration. The note is here and we have carefully examined it. It appears to have been first dated "Jan. 2, 1925," and that the figure "5", as so written, has been changed to "3", the "3" being written over the "5". There is a conflict in the evidence upon the question of whether there has been a change in the date of the instrument. Mr. D. W. Ross, a disinterested witness, who for twenty-five years was paying teller of the First National Bank of Portland and whose testimony, we think, is entitled to great weight, testified, as a witness for defendant, that he had made a study of writing for about forty years, and, concerning this alteration in the date of the note, he testified as follows:

"Q. It has been testified here, Mr. Ross, as to that date on the twelve hundred dollar note, you have ex-

amined that date thoroughly? A. Yes, sir. Q. What, in your opinion, was that originally, as to the year? A. 1925. Q. That was originally 1925? A. Yes, sure. Q. How, in your opinion, does the three come there instead of 1925? A. That is placed over the body of the five; the line at the top of the five was the concluding stroke. Q. You say that that date has been changed from 1925 to 1923? A. Yes, sir. Q. And you have examined the three thousand dollar note also? A. Yes. Q. There doesn't seem to be any change as to the three thousand dollar note? A. It is dated 1923. * * * Q. Well, what I first want to get at is the date. A. Yes. We have here a photographic enlargement, which was made for the purpose of enabling one to get a better idea of the writing, which is small, and this enlarges it so you can see it. Now, about this figure five or three, that was originally a five. You can see at the right of the letter, that little dot, right there (indicating). That is the final, finishing stroke of the letter, as he made it, and that is still there. You can trace it right from here, just from the top there, you can trace the five there going down and stopping down about here, at the distance they generally stop. This tail is a three, with that curve blended in that, and there you can see that plainly, this little stroke there that has been erased. Now, you can get close enough and you can see a very plain erasure there. It is showing the paper, the grain of the paper, showing the fibre of the paper has been removed and left it rough and blotted. Q. Can you state positively that was originally 1925? A. Yes. Q. And changed to 1923? A. Yes, sir.''

■■ Plaintiff himself testified that both the notes sued on were prepared by N. E. Jordan at plaintiff's request and that Jordan wrote that part appearing in the body of the notes about the middle of December, 1922, and postdated each of them as of January 2, 1923. Plaintiff's only explanation for the notes being so dated was that testator requested that the notes should

be so dated. Why testator should make such a request is not explained. Jordan testified that this $1,200 note is in the same condition now that it was at the time he prepared it. The instrument, however, on its face shows that the disputed figure has been written twice, once as a "5"; once as a "3", and that the stem of the "5" has been only partially erased and that in the erasure the fibre of the paper seems to have been broken. The color and kind of ink also seems to be different from that of the remainder of the writing. That an alteration has been made is apparent. Under such circumstances, it was incumbent upon plaintiff to explain the apparent alteration in the note and it was the duty of the court to submit the question to the jury whether the alteration had been made before or after its execution and, if found by the jury to have been made after its execution, whether such alteration was authorized or assented to by testator. Greenleaf says that:

"If, on the production of the instrument, it appears to have been altered, it is incumbent on the party offering it in evidence to explain this appearance. Every alteration on the face of a written instrument detracts from its credit, and renders it suspicious; and this suspicion the party claiming under it is ordinarily held bound to remove. * * * And, generally speaking, if nothing appears to the contrary, the alteration will be presumed to be contemporaneous with the execution of the instrument. But if any ground of suspicion is apparent upon the face of the instrument, the law presumes nothing, but leaves the question of the time when it was done as well as that of the person by whom, and the intent with which, the alteration was made, as matters of fact, to be ultimately found by the jury upon proofs to be adduced by the party offering the instrument in evidence. The cases on this subject are not in perfect harmony; but they are understood fully to support the doctrine just stated. They all

agree, that where any suspicion is raised as to the genuineness of an altered instrument, whether it be apparent upon inspection, or made so by extraneous evidence, the party producing the instrument, and claiming under it, is bound to remove the suspicion by accounting for the alteration. It is also generally agreed, that inasmuch as fraud is never to be presumed, therefore, if no particular circumstance of suspicion attach to an altered instrument, the alteration is to be presumed innocent, or made prior to its execution. But an exception to this rule of the presumption of innocence seems to be admitted in the case of negotiable paper; it having been held that the party producing and claiming under the paper is bound to explain every apparent and material alteration, the operation of which would be in his own favor": 1 Greenleaf on Evidence (16th Ed.), section 564.

In the same paragraph he states that the modern tendency is to abandon the so-called presumption against fraud and in favor of innocence, by which the alteration of a deed is presumed to have been made before execution, and to raise no genuine presumption in that regard. He then proceeds:

"It is also clear, that it is for the court to determine, in the first instance, whether the alteration is so far accounted for, as to permit the instrument to be read in evidence to the jury, who are the ultimate judges of the fact. But whether, in the absence of all other evidence, the jury may determine the time and character of the alteration from inspection alone, is not universally agreed."

■ That it is incumbent on the party producing a writing to explain any apparent alteration in it was held in *Dolph v. Barney,* 5 Or. 191; *Simpkins v. Windsor,* 21 Or. 382 (28 P. 72); *Nickum v. Gaston,* 28 Or. 322 (42 P. 130); *Farmers' State Bank v. West,* 77 Or. 602 (152 P. 238). It is also a requirement of the statute—section 9-1002, Oregon Code 1930. And, when the alteration was made is a question for the jury: *Palomaki v. Laurell,*

86 Or. 491 (168 P. 935). The last case cited is authority for the rule that in this state the defendant need not specially plead a material alteration in a promissory note but may prove it under a general denial. Defendant requested the court to submit this question to the jury and its failure to comply with the request, we think, is error.

 Since there must be a reversal of the judgment in this case, we deem it proper to call attention to an error to which no exception was taken, so that upon a new trial it will not be repeated. The court instructed the jury that: "It is presumed that things in possession of a person, such as the note introduced by plaintiff in this case, is owned by him." We think no such presumption attached to plaintiff's possession of this writing. By its terms it was payable to the order of plaintiff and it showed that it had not been indorsed. There was no necessity, therefore, for the application of such a presumption. The instruction, we think, was both erroneous and misleading from the fact that the jury might infer that, since plaintiff was in possession of the note and, under this instruction, was presumed to be the owner of it, the note itself must, therefore, be genuine.

In the judgment appealed from, a judgment was awarded in favor of defendant and against the plaintiff upon the $3,000 note sued on and provides that plaintiff take nothing upon that cause of action. That part of the judgment is affirmed. It also awarded judgment to plaintiff upon the $1,200 note. That part of the judgment is reversed, and the cause will be remanded to the court below for such further proceedings upon the $1,200 note as are not inconsistent herewith, and it is so ordered.

BEAN, C. J., ROSSMAN and KELLY, JJ., concur.