16112

HIOTT v. COCHRAN ET AL.
(48 S. E. (2d) 803)

*Messrs. Padgett & Moorer,* of Walterboro, for Appellant,

*Messrs. Smoak & Smoak,* of Walterboro, for Respondents,

July 27, 1948.

Oxner, J.: This suit was brought by M. H. Hiott against Pearly Cochran, Rosa Haynes, Lucille Smalls and Jim Cochran for the partition of a tract of land in Colleton County containing 28 acres, more or less. Plaintiff alleged that he owned a 128/180 undivided interest therein and each of the defendants a 13/180 interest. He asserted that his undivided interest formerly belonged to one Ellison Nesbitt, was sold under tax executions against Nesbitt and conveyed to him by three separate deeds hereinafter mentioned. The defendants denied in their answer that the plaintiff ever acquired any interest in said tract of land, stated that the taxes thereon were regularly paid each year, and alleged that the tax deeds under which the plaintiff claims were invalid. The cause was referred to the Probate Judge of Colleton County who, after taking the testimony offered by the respective parties, filed a report in which he found for the plaintiff and recommended a sale of the property and a division of the proceeds among the co-tenants according to their interests. The defendants appealed to the Court of Common Pleas where the matter was heard by Honorable L. D. Lide, who was then presiding in the Fourteenth Circuit. He reversed the report of the Probate Judge, holding that the plaintiff never acquired any interest in said property, and dismissed the complaint. This appeal by the plaintiff followed.

Before stating the issues raised by the exceptions, we shall first set forth the devolution of the title and then state the circumstances under which it was sought to sell the property for taxes claimed to be delinquent.

The 28 acre tract was formerly part of a larger tract of land owned by Cyrus Nesbitt. He died in 1887, leaving a will wherein he devised the 28 acre tract to his son, John Nesbitt. We are not concerned in this controversy with the disposition made by the testator of the adjoining tracts. John Nesbitt died intestate in 1890, leaving as his sole heirs-

at-law a widow, Venus Nesbitt, and one child, Ellison Nesbitt. Venus Nesbitt thereafter married Charles Cochran and had the following children by him: Pearly Cochran, Rosa Haynes, Lucille Smalls and Jim Cochran. (These four children are the defendants named in this action). Venus Nesbitt Cochran died intestate in 1908, leaving as her only heirs-at-law her second husband and the five children mentioned. Charles Cochran died intestate in 1928, leaving as his sole heirs-at-law his four children. Ellison Nesbitt, the only child of Venus Nesbitt Cochran by her first marriage, never married and died intestate on December 31, 1943, leaving as his sole heirs-at-law his four brothers and sisters of the half blood.

John Nesbitt constructed a house on the 28 acre tract. After his death his son and widow continued to reside on the premises as long as they lived. Cochran moved there after he married the widow. The four Cochran children were born in the house and one of them now occupies the tract of land. It will thus be seen that this small tract of land has afforded a home for the Nesbitt and Cochran families, all uneducated Negroes, for a period of fifty or sixty years during which time they have been in open, notorious, continuous and exclusive possession. By tilling the soil they have been able to derive a subsistence, although perhaps a meager one.

We shall now refer to the deeds under which the plaintiff claims an undivided interest in the premises. The property was sold on three different occasions under tax executions issued by the treasurer of Colleton County against "Ellison Nesbitt, a defaulting taxpayer". The first tax deed to the plaintiff was executed by the sheriff on February 12, 1923, in consideration of $25.00, and was recorded on March 3, 1923. It does not appear for what year the taxes were claimed to be delinquent. The second deed by the sheriff to the plaintiff was executed on January 5, 1938, and recorded on January 26, 1938. The consideration is stated

to be $11.29 and the attached tax execution shows that the property was sold to satisfy taxes delinquent for the year 1935. The third tax deed is from the sheriff to the Forfeited Land Commission. This deed, dated May 2, 1941, and recorded on November 17, 1943, expresses a consideration of $12.90 and recites that the land was sold to satisfy taxes delinquent for the year 1937. Thereafter on October 30, 1943, the Forfeited Land Commission, in consideration of $12.90, conveyed the property to the plaintiff by deed recorded on November 17, 1943. In all of these deeds the property conveyed is described as containing 40 acres, but it is conceded that the land referred to is the same as that involved in this controversy. Each deed purports to convey the land in severalty, and no reference whatsoever is made to an undivided interest therein. As heretofore stated, plaintiff claims that he acquired under these deeds an undivided 128/180 interest in the property. Ellison Nesbitt inherited a 2/3 interest from his father and a 2/45 interest from his mother, which gave him a 128/180 interest. It is admitted that the plaintiff has never been in possession of this tract of land. He claims that he never sought to obtain possession because he ascertained and was advised that Ellison Nesbitt only owned an undivided interest. The record further discloses that plaintiff has never returned this property for taxation nor paid any taxes thereon, although he claims to have owned Ellison Nesbitt's interest since 1923. He says that he "thought" the property was included in his tax returns but he did not introduce these returns in evidence.

Defendant's testimony was to the effect that the taxes on the property had never been delinquent, and tax receipts were introduced in evidence covering the years 1927 to 1943, inclusive, except that the receipt for 1942 does not appear in the record. For the years 1927 and 1928 the receipts are in the name of "Venus Cochran"; for the years 1929 to 1938, inclusive, in the name of the "Est. Venus Cochran"; and for 1939, 1940, 1941 and 1943 in the name

of the "Heirs of Venus Cochran c/o Ellison Nesbitt". (It is conceded that there was never any administration upon the estate of Venus Nesbitt Cochran, who died in 1908). These receipts show that taxes for 1935, amounting to $5.14, were paid on January 21, 1936, and taxes for 1937, amounting to $5.57, were paid on December 31, 1937.

The Probate Judge held in his report (1) that the 1923 tax deed constituted a valid conveyance to plaintiff of the interest of Ellison Nesbit; (2) that the tax assessments in the name of the estate of Venus Cochran were void; (3) that an undivided interest in the tract of land may be assessed and sold for non-payment of taxes; and (4) that Ellison Nesbitt returned this property for taxation in his name for 1934 and 1935 and that his heirs, who are in privity with him, are now estopped to attack the validity of an assessment made under his return. In reversing this report, Judge Lide held (1) that all of these tax deeds were invalid because, under the statutory laws of this State, an undivided interest in a tract of land cannot be lawfully assessed, levied on, or sold for taxes; (2) that the 1923 tax deed was also invalid because it affirmatively appeared from the recitals therein that the sheriff did not seize and take possession of the property until the day of sale; (3) that the last two tax deeds were invalid on the further ground that the taxes for 1935 and 1937 had already been paid when it was sought to issue execution and sell the property for taxes claimed to be delinquent for these years; and (4) that the plaintiff could not "possibly claim the benefit of an estoppel, for his own testimony shows that he was fully informed at all times of the status of the title, and that he had been familiar with the property practically all of his life".

It is conceded by appellant on this appeal that he acquired no title under the 1923 tax deed because it was void on its face. With reference to the claim of title under the other deeds, his counsel state in their brief: "We do not care to contest the holding of the Circuit Court that the State can-

not legally assess, seize and sell for delinquent taxes an undivided interest in real estate, but that the lands must be assessed and sold as a whole in the name of the legal owners entitled to possession. Our contention is that the Plaintiff (appellant) is entitled under the doctrine of equitable estoppel to whatever interest, even though it be an undivided interest, as was owned by Ellison Nesbitt at the time the lands were assessed for taxes in his name under the returns made by him".

We shall first discuss the status of the title to the interest claimed by appellant without reference to the question of estoppel. Since there was no administration upon the estate of Venus Nesbitt Cochran, the assessment of this tract of land in the name of the estate of Venus Cochran was invalid and any tax sale based thereon would have been void. *Carter v. Wroten et al.,* 187 S. C. 432, 198 S. E. 13, 119 A. L. R. 379; *Vallentine v. Robinson,* 188 S. C. 194, 198 S. E. 197; *Fischer et al. v. Bennett et al.,* 202 S. C. 534, 25 S. E. (2d) 746. The question in this case, however, is not whether such a sale would have been valid, but whether payment of the taxes on this tract of land under this improper assessment constituted a valid payment. We think it did. The primary purpose of every law for the enforcement of tax liens is to obtain payment of the tax. When payment has been obtained, this purpose has been accomplished. This is true whether the tax is paid under a valid or invalid assessment. In *Shackelford v. McGlashan et al.,* 27 N. M. 454, 202 P. 690, 23 A. L. R. 75, the syllabus by the Court is as follows: "Payment in good faith of taxes, although the assessment on which the payment is made erroneously describes the land intended to be assessed, is a defense against a sale and tax deed based upon a second assessment of the same land with a proper description".

Having concluded that the taxes on this tract of land for the years 1935 and 1937 were paid, was the sale of the same property under the assessment in the

name of Ellison Nesbitt to satisfy alleged delinquent taxes for these years valid? Non-payment of the tax is an essential foundation for every tax sale. "When taxes are once paid, the lien of the state therefor is discharged, and a subsequent sale of the land for such taxes, as Mr. Black says, 'is without color of authority and void; in other words, actual delinquency is a condition precedent to the right to sell any realty under a tax assessment.' ". *Nickum v. Gaston,* 28 Or. 322, 42 P. 130, 131. "It has been well said, 'that the delinquency of the owner to pay the taxes is the essential fact upon which the power of sale rests.' The right to sell is founded on the non-payment of the tax. If the tax be paid before the sale, the lien of the state is discharged, and the right to sell no longer exists. * * * The sale involves an assertion by the officer that the taxes are due and unpaid, and the purchaser relies upon this, or on his own investigations, and his title depends upon its truth. The title of the purchaser is contingent, so far as it may be affected by proof establishing the fact that the tax has been paid before the sale was made. This is an implied condition, annexed to every grant of this kind, founded on a sound construction of the law, the power of the government in collecting taxes, and the principles of natural justice". *Wallace v. Brown,* 22 Ark. 118, 76 Am. Dec. 421. Also, see 61 C. J., Taxation, Section 1522, page 1120; 51 Am. Jur., Taxation, Section 1067, page 928; Annotation 26 A. L. R. page 622.

It follows from these authorities that the taxes on this tract of land having been paid for 1935 and 1937 in the name of the estate of Venus Cochran, the attempted sale thereafter under an assessment in the name of Ellison Nesbitt to satisfy taxes for these years was void. If appellant has any claim of title, it must, as his counsel apparently concede, be based on the principle of estoppel. To establish estoppel, he relies on two tax returns purporting to have been made by Ellison Nesbitt. They are signed, "Ellison X Nes-

bitt". One is dated February 19, 1934, and the other January 29, 1935. Both list 40 acres of land and one of them refers to the land listed as "part of the John Nesbitt land". Appellant saw fit not to seek possession of the property or bring this suit until Ellison Nesbitt died, although he claims to have first acquired title in 1923. We, therefore, have no way of knowing why Ellison Nesbitt returned this property for taxation, if he did return it, when it was also returned in the name of the estate of Venus Cochran, or why he paid no taxes under this assessment.

If this was a contest between the State and Ellison Nesbitt or his heirs, it is clear that there would be no basis for an estoppel. The record does not disclose who returned this property in the name of the estate of Venus Cochran. This may have been done by the auditor or some of the co-tenants. But in any event, the taxing authorities, with full knowledge that these Negroes intended in good faith to pay the taxes on this tract of land, accepted the money. The State sustained no loss by the manner in which the property was returned for taxes. Its only interest was the collection of the tax. If the taxes had never been paid, there might be some basis for the claim that Ellison Nesbitt and those in privity with him would be estopped to deny his liability for taxes assessed pursuant to his own return, or for a claim that he and his heirs would be estopped to impeach or deny the validity of a tax sale made under such an assessment. That question, however, is not before us and we do not undertake to decide it.

We do not think appellant acquired any better title than could have been conveyed to the Forfeited Land Commission. Counsel for appellant state in their brief that he is "an innocent purchaser, who bought under a legal assessment, based upon the return of the taxpayer who actually owned the major undivided interest and who declared that he owned it all". Assuming this to be true, to what extent has appellant been damaged? It is not contended that he has

made any improvements on the property or expended any money on the strength of his purchase. His loss could not exceed the amount which he had paid to the taxing authorities, with perhaps interest thereon. His right to recover these items and the party or parties, if any, liable therefor are questions which are not involved on this appeal. In no event would such an estoppel have the effect of divesting the interest of the heirs of Ellison Nesbitt in this property, which was perhaps sold for only a fractional part of its value.

We also agree with Judge Lide's conclusion that appellant was "fully informed at all times of the status of the title" and cannot claim the benefit of estoppel. He has lived near this property for a period of sixty or seventy years and many years ago acquired several adjoining tracts. He knew these Negroes well; many of them worked for him at various times. The overwhelming weight of the testimony is to the effect that at the time he purchased at the second tax sale, he knew that Ellison Nesbitt only had an undivided interest. Indeed, he assigns this as the reason for not having made any effort to obtain possession of the property under the deed to him in 1923. He has never been misled by the 1934 and 1935 tax returns purporting to be made by Ellison Nesbitt. In fact, he testified that he knew there was a double entry "after I bought it twice", showing conclusively that he had full knowledge of the situation before purchasing the third time.

Judgment affirmed.

BAKER, C.J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.