17121

ELIJAH DUNHAM, WILLIAM DUNHAM, BEN DUNHAM, CECILY D. BETHEA, FLORETTA DUNHAM, WILLIAM GRAVES, IRENA G. WILLIAMS, CHARLIE LEE WRIGHT, ANNIE MAE WRIGHT, MAE OLA W. BROWN, GRACIE WRIGHT and LOU THELMA W. JOHNSON, Respondents, v. ST. CLAIR DAVIS, Appellant.

(91 S. E. (2d) 716)

*Messrs. J. Malcolm McLendon* and *Woods & Woods,* of Marion, *for Appellant,*

*Messrs. John M. Scott* and *George W. Keels,* of Florence, and *J. Ralph Gasque,* of Marion, *for Respondents,*

February 20, 1956.

LEGGE, Justice.

Respondents sued to recover from appellant possession of a tract of land in Marion County, and for damages resulting from his alleged unlawful entry and continued trespass thereon. He answered, claiming title under a tax deed, and also by adverse possession; and further alleged that he was the holder of a mortgage over the property, foreclosure of which, together with reimbursement for payments made by him for taxes, was prayed in the event that respondents be held to have any interest in said lands. In the trial of the case, before a jury, the presiding judge ruled that appellant's claim of title under the tax deed was invalid, and submitted to the jury the issue of adverse possession, upon which the jury found in appellant's favor. Thereafter the trial judge granted respondents' motion for judgment notwithstanding the verdict; and this appeal followed.

Appellant's exceptions involve two questions, which he states as follows:

1. Did Act No. 259 of the 1947 Acts of the General Assembly, Act May 12, 1947, 45 St. at Large, p. 530, have the effect of validating his tax title and barring respondents' claim of title?

2. Was the evidence sufficient to require submission to the jury of appellant's claim of title by adverse possession?

The tract in question, comprising some three hundred fifty acres, was owned by W. A. Dunham at the time of his death, intestate, in 1913, survived by his widow and six chil-

dren, who continued to occupy it. No administration was had on Dunham's estate. In 1931 the widow and one of the children died, both intestate, the latter leaving as her heirs seven children who, with the five living children of W. A. Dunham, are respondents here. On December 3, 1935, the tax collector of Marion County levied upon the property under tax execution issued against "Est. W. A. Dunham".

During her life, W. A. Dunham's widow had become indebted to appellant's father, J. C. Davis; and to take care of that indebtedness the five living children and one of the grandchildren executed and delivered to J. C. Davis after her death their promissory note dated December 31, 1935, in the amount of seven hundred dollars, payable on November 1, 1936, with interest at the rate of seven per cent, and a mortgage securing the same and covering the property in question. This mortgage was recorded on the date of its execution, and, with the note secured by it, was assigned on the same day as a gift by J. C. Davis to his son, appellant here; but the assignment was never recorded.

On January 6, 1936, six days after appellant had thus acquired the note and mortgage, the tax sale was held, and at it he was the highest bidder at $141.06. The tax deed was delivered to him in May, 1937 (it was dated May 10, 1937), and was recorded on December 5, 1942.

There having been no administration on the estate of W. A. Dunham, the sale of the property for delinquent taxes in the name of his "estate" was void. *Carter v. Wroten,* 187 S. C. 432, 198 S. E. 13, 119 A. L. R. 379; *Vallentine v. Robinson,* 188 S. C. 194, 198 S. E. 197; *Fischer v. Bennett,* 202 S. C. 534, 25 S. E. (2d) 746; *Hiott v. Cochran,* 213 S. C. 207, 48 S. E. (2d) 803; *Gregg v. Moore,* 226 S. C. 366, 85 S. E. (2d) 279. The two-year statute of limitation, Code 1952, Section 65-2779, did not, in 1936, operate in favor of a purchaser in such case. *Smith v. Cox,* 83 S. C. 1, 65 S. E. 222.

Appellant, conceding the invalidity of the tax sale in 1936, contends that it was validated by Act No. 259 of the 1947

Acts of the General Assembly, and that therefore respondents are barred by the two-year statute. The 1947 Act provides as follows:

"Section 1: That, for the purpose of enforcing the payment and collection of delinquent taxes, the State, or any sub-division or municipality thereof, is authorized and empowered to levy upon and sell any property real or personal in the name of the person, firm or corporation in whose name the property was returned for taxation whether or not he, she or it be deceased or in existence at the time of the levy and/or sale without naming or referring to the heirs or estate of such owner.

"Section 2: That the Statute of Limitations applicable to tax execution sales, generally, shall apply to sales made as herein above provided for.

"Section 3: That this Act shall apply to sales heretofore made, as aforesaid, and such sales are hereby confirmed; Provided, however, this Act shall not be construed so as to affect suits or actions pending on claims heretofore actually made against purchasers or their heirs or grantees."

Sections 1 and 2 of the Act appear in the 1952 Code as Sections 65-2769 and 65-2769.1 respectively, but Section 3, upon which appellant must rely, was not included in the codification. Respondents suggest that because of such omission the statute has no retroactive effect. On the other hand, appellant argues that the purpose of Section 3, so far as concerns the tax sale here in controversy, had been accomplished before the enactment of the 1952 Code, and that its omission therefrom is immaterial. For the purpose of this discussion we shall assume, without deciding, that the applicability of Section 3 to prior tax sales was not affected by its omission from the 1952 Code. Nor is it necessary to determine here whether the provision of Section 1, Code 1952, Section 65-2769, authorizing levy and sale "in the name of the person * * * in whose name the property was returned for taxation" applies where the levy and sale are made in

the name of the estate of such person, no administration having been had thereon.

The obvious purpose of the Act was to relax the stringency of the law as it then existed (Cf. Code 1952, Section 65-1627) ; and equally plain is the legislative intent by Section 3 to make the Act retroactive. In the case at bar, title to the property had vested in respondents prior to the tax sale and was not affected by it because, as we have seen, the sale was void. Retroactive application of the 1947 Act would be clearly unconstitutional as depriving them of property without due process of law. *Muldrow v. Caldwell,* 173 S. C. 243, 175 S. E. 501; *First Presbyterian Church v. York Depository,* 203 S. C. 410, 27 S. E. (2d) 573.

We recognize the oft-cited general rule, which appellant pleads here, that the legislature, by a curative or validating statute which is necessarily retrospective in character and retroactive in effect, can validate any act which it might originally have authorized, *Green v. City of Rock Hill,* 149 S. C. 234, 147 S. E. 346, but this rule is subject to the constitutional limitation before mentioned.

"Where no vested rights are impaired, a defective tax deed may be validated by a subsequent statute, but an act validating a tax title of the state where it was void before impairs vested private rights and is void". 16 C. J. S., Constitutional Law, § 226(f), p. 652.

"The power of the legislature when not otherwise restricted by special constitutional limitation to enact curative legislation remedying tax titles invalidated or subject to be invalidated by reason of defects and irregularities in tax sale proceedings prior or subsequent to the tax sale depends in general upon whether the defects sought to be cured are jurisdictional defects, or merely irregularities in failing to comply with directory matters. * * * It may not, however, by way merely of curative legislation, cut off all rights to attack a tax deed or tax title for failure to comply with re-

quirements of a jurisdictional nature constituting essential prerequisites to the validity of the title or deed". 51 Am. Jur., Taxation, p. 935, Section 1075.

Appellant suggests that, even though Section 3 of the 1947 Act be disregarded, Section 2, which expressly made the two-year statute of limitation applicable to tax sales referred to in Section 1, is not retrospective, but prospective, and that therefore the two-year statute should be considered as having run against respondents from the effective date of the Act, May 12, 1947; and in support of this proposition cites *Gillespie v. Pickens County,* 197 S. C. 217, 14 S. E. (2d) 900. The rule there mentioned, and aptly phrased in *Stoddard v. Owings,* 42 S. C. 88, 20 S. E. 25, 26, that "the legislature may, without any violation of constitutional provisions, change the periods prescribed as a limitation to actions, either by extending or reducing the periods previously prescribed, as well in reference to antecedent as subsequent contracts", is well settled, but in our opinion inapplicable here. Section 2 of the Act is prospective, and relates to sales made after May 12, 1947. The sole provision with regard to sales prior to that date is in Section 3, by which respondents would have been immediately foreclosed of all right to contest the tax sale in question.

Apart from the foregoing considerations, the tax sale was ineffective, of itself, to vest title in appellant, since he was a mortgagee and therefore his purchase will be deemed to have been for the protection of his lien and not to have defeated respondents' title. *DeLaine v. De-Laine,* 211 S. C. 223, 44 S. E. (2d) 442.

We agree with the ruling of the circuit court that appellant acquired no title under the tax deed. There remains for consideration his claim of title by adverse possession.

After the execution of the mortgage before mentioned, and after the tax sale, some of the respondents continued to occupy the property and farm it. Floretta lived there until her marriage in 1942. Benjamin, who had moved away in 1934,

returned and farmed it in 1939. Elijah continued to live on the place, and in 1936 or 1937, with appellant's permission, built a six-room house there, in which he still lives. William joined Elijah in cultivating the land from 1939 through 1950. About 1938, appellant told Elijah and Benjamin that he owned the property, and that they would have to pay rent. For 1939 and subsequent years through 1946, the rent was $50.00 per year; in 1947, $75.00; in 1948, $80.00; in 1949 and 1950, $170.00. In 1951 the rent was increased to $300-.00, whereupon the Dunhams quit cultivating the lands and appellant commenced cultivating them. After 1950, appellant charged Elijah $25.00 per year for the land upon which his house had been built. It may be mentioned, in passing, that William and Elijah and Benjamin, who were of limited intelligence and education, testified, despite their several letters to appellant in which they referred to payment of "the rent", that the payments made by them to appellant were on account of the mortgage debt and taxes, and not by way of rent.

Appellant paid all taxes on the property subsequent to the tax sale. In 1943, following the recording of the tax deed in December, 1942, the property was for the first time assessed for taxation in appellant's name.

In 1944 appellant required Elijah to pay $5.00 for a tree that he had cut down for stove wood. In 1947 he refused to permit Elijah to tear down the old dwelling, and in 1948 he tore it down himself. In 1948 or 1949 he required William to pay for some timber that he had cut. In 1949 appellant sold some timber. And in 1951 he built a storage house and shed, at a cost of some $1,400.00, and cleared about 25 or 35 acres at a cost of approximately $2,000.00.

In order to perfect in a mortgagee title by adverse possession as against the mortgagor, the adverse acts relied upon by the former must be such as to give notice that he is claiming not as mortgagee, but as owner. *Ham v. Flowers*, 214 S. C. 212, 51 S. E. (2d) 753, 7 A.

L. R. (2d) 1124; *Knight v. Hilton,* 224 S. C. 452, 79 S. E. (2d) 871. While the testimony in the instant case was sufficient to take that issue to the jury as to respondents William, Elijah and Benjamin, evidence was wholly lacking in that regard as to the other respondents. Moreover, the testimony showed without contradiction that one of the respondents was, until 1950, a minor, and therefore could not have authorized anyone to bind her. Even if the other respondents had known that William, Elijah and Benjamin were required by appellant to make annual payments to him that would not in itself have been notice that he was claiming as owner, for such payments by those respondents who were engaged in farming the land would have been quite consistent with their obligation to him and to their cotenants to make payments toward the discharge of the mortgage debt and reimbursement of appellant for his payment of delinquent and current taxes. So also with regard to payments by William and Elijah for timber cut by them, for their cotenants would have had the right to expect them to pay for it, and appellant the right to require payment made to him. Also, his refusal to allow Elijah to tear down the old building was within his right as mortgagee. In short, all of appellant's acts with regard to the property prior to 1948 were consistent with his position as mortgagee, especially when considered in connection with his acquisition of the mortgage a few days before the tax sale, his purchase at that sale, his failure to obtain the tax deed when he was entitled to it, his withholding it from record for more than five years after its receipt, his payment of taxes during that period in the name of the estate of W. A. Dunham, and his permitting Elijah to build a home on the place. Indeed, the following testimony of appellant himself, on direct examination, is susceptible of the inference that he considered himself to be acting as mortgagee and not as owner:

"Q. Have you received payment from any of these Dunham people on this mortgage? A. Not one penny.

"Q. Have they ever attempted to make payment of the mortgage? A. They have made an attempt to buy it back from me.

"Q. How many times did they make an attempt? A. Several and I always offered to sell it to them".

As was pointed out by the trial judge in his order, there is nothing in the record of this case evincing any intention on the part of appellant to take advantage of the respondents. On the contrary, he appears to have dealt with them frankly and in complete good faith. Decision adverse to his claim of title requires remand of the cause for trial of the issues under the pleadings relating to the note and mortgage hereinbefore mentioned, including the accounting involved, as directed in the order of the circuit court.

Judgment affirmed, and cause remanded for further proceedings not inconsistent herewith.

STUKES, TAYLOR and OXNER, JJ., and J. WOODROW LEWIS, A. A. J., concur.