232 S.C. 175 (1957)
101 S.E.2d 278
Elijah DUNHAM, William Dunham, Ben Dunham, Cecily D. Bethea, Floretta Dunham, William Graves, Irena G. Williams, Charlie Lee Wright, Annie Mae Wright, Mae Ola W. Brown, Gracie Wright, and Lou Thelma Johnson, Respondents,
v.
St. Clair DAVIS, Appellant.
17369
Supreme Court of South Carolina.
December 17, 1957.
*176 *177 Messrs. Woods & Woods and J. Malcolm McLendon, of Marion, for Appellant.
Messrs. J. Ralph Gasque, of Marion, and George W. Keels, of Florence, for Respondents.
*178 The opinion of Judge Baker follows:
The background and origin of the present issues are to be found in the appellate decision of the parent case, Dunham v. Davis, 229 S.C. 29, 91 S.E. (2d) 716, 720. The decision was adverse to defendant's claim of title and the case remanded "for trial of the issues under the pleadings relating to the note and mortgage hereinbefore mentioned, including the accounting involved, as directed in the order of the circuit court." That which is directed by the Circuit Court order is the foreclosure of defendant's mortgage and the credit "for all improvements that he made on the place and any increased value resulting from his enlarging and improving the cultivatable lands."
Several references were held followed by the filing of the report of the Judge of Probate, acting as Master or Referee, on December 20, 1956. Judge McIntyre, from the testimony and exhibits, calculated the mortgage debt, added the taxes and insurance as paid by defendant, and credited the plaintiffs on the debt the amount due by defendant for rent, old lumber, timber and trees cut and sold. The debt, represented by the note and mortgage, was computed including deduction for credits to December 31, 1956, and there is due and owing thereon $1,501.14, with 10 per cent added as attorney's fees, giving a total of $1,651.52. There is no exception to the result of the foreclosure. The master further recommended the payment to defendant of $8,021.25 for improvements, and payment to defendant in the amount of $10,000.00 "found to be sufficient to do equity between the parties."
The exceptions challenge the various items, and the amounts allowed for each item, in the compilation of the total of the improvements or betterments, and further attack the sum of $10,000.00 recommended upon the basis of equitable adjustment.
*179 The improvements, for which defendant seeks compensation, consists of building a packhouse and shed, tearing down and moving an old house, clearing up approximately 60 acres of land for cultivation, a soil building program, and preparing the land for cultivation in January, 1954. The Master concluded that the defendant expended the following sums for improvements for which he should be reimbursed: $1,271.17 for the packhouse and shed, built in 1951; $234.00, tearing down and moving an old house; $5,476.35, clearing approximately 60 acres of land, 1951, 1952, 1953; $904.83, soil building program in 1952; $134.90, preparation of land for farming, January, 1954. These items total $8,021.25.
It will be observed the Master has accepted the defendant's cost of the improvements as the measure of the increase in value. There is no direct evidence to sustain this method other than the actual cost to the defendant, but it is implicit in the Master's conclusions that the increase in value is at least $8,021.25. The actual cost is taken to be the measure of the enhancement in value.
Plaintiff's first exception is confined solely to what it would cost to built the packhouse and shed. They contend the cost could not have exceeded $500.00, whereas the Master recommended recovery of $1,271.17. The packhouse was built and shed added thereafter. The defendant produced his records to substantiate the cost of the building. Against this positive evidence the plaintiffs offered the testimony of a contractor who stated the building could have been erected in 1951 for $500.00. There is substantial difference in the two amounts. The Master had to accept one of two definite figures since there is no area of reconciliation. While the defendant's cost may appear to be high, it may also be equally apparent that plaintiffs' cost is low. In this situation, the preponderance of the evidence favors the defendant, and the exception will have to be dismissed.
The second exception is also without merit. The cost of removal is not questioned, but it is contended the value of the tract of land was not enhanced thereby. *180 The transcript of record from the original trial was made a part of the evidence herein. From this transcript and the opinion of the Supreme Court it will be noted that one of the plaintiffs, in 1947, requested permission to tear the house down. The defendant removed it in 1948. The house, in its condition, was of no value to the farm but the area upon which it stood could be used for farming.
Exceptions three, four and five question the expenditure of $5,476.35 for clearing of land, and if spent for this purpose there has not been a corresponding increase in value. The defendant testified, upon cross examination, that in 1954 the cleared land was worth "$100.00 to $125.00 per acre since I have improved it." If you take the cost basis of clearing the land, as accepted by the Master, there is an average of $90.00 per acre for 60 acres. In addition thereto the defendant also claims improvements to the cleared land in the amount of $234.00 for moving the house, and $904.83 for a soil building program. The total expenditure for clearing the land, removal of the house and soil building program is $6,615.18, which according to Master's Report represents the increased value. This gives an average increase in value from 1948 through 1954 of $112.25 per acre which figure, however, does not include the rise in costs of farm lands from 1948 through 1954.
The plaintiffs' evidence is the acreage could have been cleared for approximately $1,200.00 and this would represent the added value, also upon a cost basis.
An interesting annotation is contained in 24 A.L.R. (2d) at pages 37-49 on the question of accepting the cost of improvements rather than the enhanced value. Without comment upon the various cases cited and quoted in the annotation it appears from the evidence in this case, on this point, that rule formulated by our statutes should be followed to reach a just result, that being enhancement in value.
There is not sufficient testimony to establish the value of the 60 acres on an enhancement measure. There has been an improvement and defendant is entitled *181 to compensation therefor. The increase may be equal to the cost, greater or less than the expenditure. The exceptions on this issue are sustained, but only to the extent of referring the case back to a referee to determine the value imparted to the property by reason of the clearing operations.
Exceptions nine and ten are dismissed. Plaintiffs have not been prejudiced by any defect in service of the notice and the copies of the instruments are acceptable in lieu of the originals.
The error alleged in exceptions six and seven relate to defendant's soil building program, the cost of which is allowed by the Master. The defendant expanded $904.83 on 35 to 40 acres to improve the fertility of the soil. For this purpose he used velvet beans, crotelaria, lespedeza, and fertilizer. Soil building is recognized as an improvement. In 42 C.J.S., Improvements, § 1, page 423, it is stated: "While fertilization of the land for the purpose of raising crops in the ordinary course of tillage is not a betterment or improvement, it may be otherwise as to high fertilization, over and above the ordinary fertilization for the purpose of growing crops, which is of permanent effect and enhances the value of the land."
This program goes beyond ordinary tillage and is of sufficient permanency to constitute an improvement while the actual cost is not the correct measure there is a reasonable inference of equalization of benefits and costs. These exceptions cannot be sustained.
Exception eight is sustained. The sum of $134.90 for preparation of the land in January of 1954 comes within the ordinary course of tillage, and is not an improvement.
Exceptions 11, 12 and 13 challenge the conclusion of the Master that defendant should be allowed $10,000.00, based upon supervision and protection of the timber "in doing equity between the parties, as required by the order of Judge Griffith and the opinion of the Supreme Court."
*182 The defendant obtained his tax title in May of 1937, which was not recorded until December of 1942. The mortgage was delivered on December 31, 1935, and assigned on the same date to defendant. On January 6, 1936, six days after appellant became the owner of the note and mortgage, the tax sale was held, and defendant was the highest bidder at $141.06.
The property in 1937 was worth $800.00 to $1,200.00, and has increased in value to $40,000.00, or more, which enhancement in value is substantially due to the increased value of the timber now growing upon the land. The factual findings, in the report, are that defendant spent 16 1/2 years in caring for the property, "protecting the growth of small timber which was upon the land against the ravages of fire and against people who would have cut it and hauled it away." Throughout this period of 16 1/2 years, the Master concludes that defendant "exercised all of the attributes of ownership." The latter statement is in conflict with the Supreme Court decision which states, "In short, all of appellant's acts with regard to the property prior to 1948 were consistent with his position as mortgagee * * *. Indeed, the following testimony of appellant himself, on direct examination, is susceptible of the inference that he considered himself to be acting as mortgagee and not as owner * * *."
Another factor which apparently influenced the Master in his $10,000.00 recommendation is the interest acquired by Richard Furches. As far as revealed in this record there is ample basis for indignation over the rights obtained by Furches, but the injustice, if any, to plaintiffs cannot inure to the benefit of defendant and thereby recompense him beyond his just compensation. The defendant cannot take advantage of any champerty or maintenance by Furches for that is not an issue or question in the proceeding to this date.
The Betterment Statutes, Sections 57-401 through 57-410, 1952 Code of Laws, recognizes an equitable right and defines "equitable compensation." These statutes, as so neatly expressed in Tumbleston v. Rumph, 43 S.C. 275, 21 *183 S.E. 84, 86, are "for the purpose of softening the asperities of the law, and affording relief when none otherwise existed." The increase or enhancement in value in consequence of the improvements is the measure of the equitable compensation. The remand by the Supreme Court is "for trial of the issues under the pleadings relating to the note and mortgage hereinbefore mentioned, including the accounting involved, as directed in the order of the circuit court." The order of the Circuit Court directs that "in the accounting involved, he should be allowed credit for all improvements that he made on the place and any increased value resulting from his enlarging and improving the cultivatable lands." That is what is "proper in doing equity between the parties."
In 27 Am. Jur., Page 261, Sec. 3, it is stated: "The betterment acts or occupying claimant acts are not held to attempt to change this common-law rule of ownership, but instead to work out what is deemed to be the equity of one who has made permanent improvements on the land of another."
The Master recognized that the sum of $10,000.00 could not be classified as an improvement, or compensation for improvements, since he was explicit in his terminology of "equitable compensation" as found in the following statement: "Taking into consideration that I have found $8,021.25 for the defendant, on the items of improvements, I find that the sum of $10,000.00 which would be at the rate of approximately $50.00 per month, will fairly compensate plaintiff (defendant?) in this regard. In my opinion, this sum will be sufficient for further relief for the defendant so as to do equity between the parties as required by the order of Judge Griffith and the opinion of the Supreme Court."
An excellent definition of improvements is contained in 27 Am. Jur. Sec. 19, page 274: "The phrase `permanent improvements' means something done to or put upon the land, which the occupant cannot remove or carry away with him, either because it has become physically impossible to separate it from the land or because, in contemplation *184 of law, it has been annexed to the soil and is therefore to be considered a part of the freehold."
Also in 42 C.J.S., Improvements, § 1, page 422: "It has been held, on the one hand, that the term `improvements' applies only to things which have been placed upon the land under such circumstances as to make them a part of the realty, and, on the other hand, that it comprehends all additions to the freehold, except trade fixtures which can be removed without injury to the building."
The defendant has done nothing to the timber lands in the nature of fertilization, setting out young trees, thinning out undesirable growth of scrub timber to promote the development of the remainder, construction of fences, or anything which can be considered as an addition to the timber lands. The maintenance of the old road referred to in the testimony, would not be an improvement for it was already there when the defendant took over. Also noted is the absence of any monetary expenditures by the defendant for the development of the trees. An excellent annotation on the subject of compensation as improvements will be found in 24 A.L.R. (2d), 17. Exceptions 11, 12 and 13 are sustained.
The Report of the Referee is partially accepted, modified and reversed. The defendant is to be allowed $1,271.17 for the packhouse and shed, $234.00 for tearing down and moving the old house and $904.83 for the soil building program. The case is returned to receive evidence to determine the enhancement in value of the farm lands resulting from the clearing program.
The defendant is not entitled to $134.90 for preparation of the land in January of 1954, nor $10,000.00 for adjustment of equities.
There is no question as to the amount of the mortgage indebtedness inclusive of the various credits, which is $1,501.14, with 10% attorney's fees, as of December 20, 1956.
*185 December 17, 1957.
PER CURIAM.
The order of the Honorable G. Badger Baker has been carefully considered in the light of the record and the exceptions, and we find no error.
Let the order be reported as the judgment of this Court.