**John C. BECK and Kathleen Beck, Plaintiffs-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Defendant-Appellee.**

No. 81–7053.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 5, 1982.

Decided June 2, 1982.

Samuel A. Karlin, Los Angeles, Cal., for plaintiffs-appellants.

Robert S. Pomerance, Washington, D. C., argued, for defendant-appellee; Robert J. Duffy, Daniel F. Ross, John F. Murray, Michael L. Paup, Washington, D. C., on brief.

Before WALLACE, HUG and ALARCON, Circuit Judges.

ALARCON, Circuit Judge:

John C. and Kathleen Beck ("Taxpayers") were limited partners in two California partnerships—Moreno Company Two ("Moreno 2") and Riverside Two ("Riverside 2")—formed for the purpose of purchasing commercial real estate.[1] Taxpayers contributed a total of $23,085 to these partnerships and the following year sought to deduct claimed losses totaling $92,554 arising from their share of prepaid interest and loan points allegedly paid by the two part-

---

1. Both partnerships shared the same general partner, CAL–AM. Joseph Laird was the controlling officer of Moreno 2 and Riverside 2. In addition, Laird exercised effective transactional control over various other entities with which Moreno 2 and Riverside 2 became directly, or indirectly involved, including CAL–AM, Go Publishing, J. E. C. Mortgage Corp., and Bio-

Sci. Although this factual background is important to understand all the transactions before us, our decision is not premised on a finding that the inter-relationship between the involved entities denied the existence of a genuine multiple party transaction. *See* § A(3) *infra*.

nerships under I.R.C. § 163(a).[2] The Commissioner disallowed the deductions and assessed Taxpayers with a deficiency of $29,067 for the year 1974. Taxpayers filed a complaint in the tax court. The tax court upheld the Commissioner's decision and denied the deductions after finding that: (1) the purchase price far exceeded the properties' fair market value; and (2) Taxpayers were not subject to personal liability on the underlying loan. The tax court concluded that, based on the above, the transactions lacked economic substance and therefore could not support interest deductions under I.R.C. § 163(a). *See Beck v. Commissioner*, 74 T.C. 1534 (1980) (opinion of the tax court below).

On appeal, Taxpayers contend that, *inter alia*, (1) the tax court erred in its determination of the fair market value of the properties involved; (2) the tax court's reliance on *Estate of Franklin v. Commissioner*, 544 F.2d 1045 (9th Cir. 1976), was inappropriate; and (3) the tax court erred in not finding that the transactions had economic substance pursuant to the decision in *Frank Lyon Co. v. United States*, 435 U.S. 561, 583–84, 98 S.Ct. 1291, 1303–04, 55 L.Ed.2d 550 (1978), since multiple parties were involved and a profit was garnered in a later sale, indicating a purpose for the transaction other than tax avoidance. We reject Taxpayers' contentions and affirm the tax court's ruling denying the section 163(a) deductions for lack of genuine indebtedness and economic substance.

FACTS

On December 30, 1974, Moreno 2 purchased eight lots of unimproved land from Go Publishing for $1,008,000. The terms were as follows: $8,000 cash as a down payment; a one million dollar nonrecourse promissory note secured by an all inclusive trust deed; $100,000 as prepaid interest for twelve months; and $333,000 as payment for loan points.[3] Moreno 2 financed the

purchase with $108,000 obtained from partner contributions, $10,260 of which was contributed by Taxpayers, and a $333,000 nonrecourse loan from J. E. C. Mortgage Corp. ("J. E. C.") secured by the trust deed on the eight lots. Under the terms of the loan agreement, J. E. C.'s only remedy in the event of default would be repossession of the partnership's interest in the eight lots.

On December 30, 1974, Riverside 2 purchased an unimproved lot of land from Go Publishing for $126,000, subject to the following terms: $1,000 cash as a down payment; $125,000 nonrecourse promissory note secured by a deed of trust; $12,500 as prepaid interest for twelve months; and $41,625 as payment for loan points. No other interest was due on the promissory note until January 1, 1977. To finance this transaction, Riverside 2 obtained $13,500 from partner contributions, $12,825 of which was contributed by Taxpayers, and a $41,625 nonrecourse loan from J. E. C.

At trial, conflicting evidence was presented as to the value of the lots purchased by the partnerships. An expert appraiser testified that the eight lots purchased by Moreno 2 had a fair market value of $270,000 at the time of the purchase, and that the lot purchased by Riverside 2 had a fair market value of $42,500 at the time of the purchase. Taxpayers presented evidence that the appraiser ignored an obligation of CAL–AM, Inc. to develop the land. They contend that, in addition to prior loan encumbrances on the land, this development obligation increased the fair market value of the land so as to approximately equal the purchase price paid by each partnership. The tax court, however, found that any possible errors made by the appraiser were insignificant.

Taxpayers sought to establish a profit motive for entering the transaction by proof of the amount of money realized due to the subsequent sale of the properties by

---

2. I.R.C. § 163 provides:

   *Interest* —There shall be allowed as a deduction all interest paid or accrued within the taxable year *on indebtedness.*

3. The term points as used in this case refers to a charge collected by the lender as a cost of obtaining the loan. They are collected in addition to the stated annual interest rate. *See* Rev.Rul. 540, 1970–2 C.B. 101.

the partnerships. On November 1, 1975, Moreno 2 sold the eight lots to Bio-Science Resources, Inc. ("Bio-Sci") for $1,520,000. Bio-Sci assumed the one million dollar obligation and gave a $520,000 nonrecourse promissory note secured by another trust deed on the land. Riverside 2 sold its lot to Bio-Sci in 1975 for $190,000. Bio-Sci assumed the $125,000 obligation subject to a trust deed, and gave a $65,000 nonrecourse promissory note.

The tax court denied Taxpayers any interest deductions for the payments of prepaid interest and points by Moreno 2 and Riverside 2. It determined that: (1) the nonrecourse loans made by J. E. C. to the limited partnerships were not "genuine indebtedness" under I.R.C. § 163(a) because the amounts of the loans were "inflated" and "far in excess of the fair market value of the property" that secured them, so that the transactions lacked economic substance, *Beck*, 74 T.C. at 1562; and (2) no payment of points occurred since only promises, and not cash or its equivalent, were exchanged.

### A.

#### 1. *Tax Court's Determination As To Fair Market Value*

Taxpayers do not disagree with the tax court's reading of *Franklin*, 544 F.2d at 1045. Instead they argue that the tax court incorrectly interpreted various stipulations regarding the fair market value of the properties in question. Taxpayers contend that the fair market value of the property actually approximated the purchase price primarily because of CAL–AM's promise to develop the property for the benefit of the partnerships. At trial, Taxpayers attacked the appraiser's expertise, methodology and conclusions, particularly his omission of CAL–AM's development obligation from his analysis.

■ We reject each of Taxpayers' contentions. The tax court's determination that the fair market value of the properties far exceeded the purchase price was based on competent and substantial evidence. This was a factual determination. *Thomp-*

*son v. Commissioner*, 631 F.2d 642, 646 (9th Cir. 1980), *cert. denied*, 452 U.S. 961, 101 S.Ct. 3110, 69 L.Ed.2d 972 (1981). Factual findings by the tax court are not overturned on appeal unless clearly erroneous. *Geneva Drive In Theatre, Inc. v. Commissioner*, 622 F.2d 995, 996 (9th Cir. 1980). The tax court in the matter before us found that the appraisals which valued the properties at some $800,000 below the purchase price reflected the properties' true fair market value. The appraiser had been in the business of making independent real estate appraisals in the area for over twenty-five years. He valued the properties by considering some 150 comparable properties in the vicinity sold during 1970–1977. He also contacted governmental agencies to obtain zoning information, building permits and utility information. He spoke to real estate brokers, investors and other individuals knowledgeable in the market.

The tax court found no enforceable promise or commitment obliging CAL–AM to develop the property, and that its statements in that regard were merely "saletype puffery." The tax court also found that none of the alleged methodological errors would bring the properties' fair market value close to the large purchase price paid by the limited partnerships. The tax court's findings as to fair market value were not clearly erroneous.

#### 2. *Tax Court's Reliance On "Franklin"*

Taxpayers contend that since there is no disparity between fair market value and purchase price, the tax court erred in applying *Franklin*, 544 F.2d at 1045. As discussed above, the evidence showed that a disparity existed.

In *Franklin*, *id.* at 1046, a limited partnership purchased a hotel and related property. The purchase was combined with a complicated sale and leaseback transaction where no cash would change hands between the vendor and the purchaser until balloon payments became due ten years after the sale, with the exception of a $75,000 prepaid interest payment. There was no personal liability on the debt and, at trial, the pur-

chaser failed to demonstrate that the purchase price was at least approximately equivalent to the fair market value of the property. *Id.* at 1048–49. Thus, the transaction lacked economic substance and the limited partner was not entitled to his derivative share of depreciation and interest deductions.

It is of no consequence that *Franklin* denied deductions solely for prepaid interest while taxpayers here claimed deductions for both points and other prepaid interest; nor is it important that *Franklin* concerned a sale and leaseback while in the present case the transaction took the form of an outright sale. What is important for tax purposes is the economic substance, or lack thereof, of the challenged transaction. *See id.* at 1048 (failure to demonstrate that purchase price was at least approximately equivalent to fair market value of property is a fatal defect). We do not purport to rule on the validity of the transactions here with respect to areas other than tax law. We affirm the tax court's holding that these transactions had no substance under *Franklin.*

### 3. *Appellant's Reliance On Lyon*

The appellant's reliance on *Frank Lyon v. United States,* 435 U.S. 561, 98 S.Ct. 1291, 55 L.Ed.2d 550 (1978) is misplaced. The Court there held that the sale and leaseback was a genuine transaction with economic substance, independent of the tax considerations. Here, the tax court has found that the transaction lacks economic substance. That finding is well supported by the evidence.

### B.

■ In order to qualify for the section 163(a) deduction there must be a genuine indebtedness. To justify an interest deduction, a taxpayer must actually pay for the use or forbearance of money. *Norton v. Commissioner,* 474 F.2d 608, 610 (9th Cir. 1973). Where the amount of a purported nonrecourse purchase money debt greatly exceeds the value of the property securing the debt, we have held that there is no genuine indebtedness because the so-called debt "has economic significance only if the property substantially appreciates in value. . . ." *Franklin,* 544 F.2d at 1049. A purchase price approximately equal to the fair market value of the property under ordinary circumstances would rather quickly yield an equity in the property which the purchaser could not prudently abandon. This is the stuff of substance. It meshes with the form of the transaction and constitutes a sale." *Id.* at 1048. A purchaser who pays the fair market value has an economic incentive to continue payments on the property, and cannot prudently walk away, even from a poor business deal.

■ In this case, the amount of the indebtedness greatly exceeded the reasonable value of the underlying security. For the reasons expressed in *Franklin,* the deduction must be disallowed.

Because we hold that the deductions for prepaid interest and points were properly disallowed on the ground that the transaction lacked economic substance, we need not address the tax court's alternative holding that the points were disallowed because they were not actually "paid." Accordingly, the decision of the tax court is AFFIRMED.