WEN Y. CHAO and CHING J. CHAO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Chao v. Commissioner
Docket No. 2292-83.
United States Tax Court
T.C. Memo 1985-444; 1985 Tax Ct. Memo LEXIS 190; 50 T.C.M. (CCH) 895; T.C.M. (RIA) 85444; August 22, 1985. John Patrick Kelly, for the petitioners. Ronald M. Rosen, for the respondent. COHEN
MEMORANDUM OPINION COHEN, Judge: This case is before the Court on respondent's motion for summary judgment pursuant to Rule 121 [1] and motion for damages under section 6673. These motions were set for hearing in Los Angeles, California, on June 24, 1985. Respondent seeks summary judgment as to a deficiency of $27,129.88 in petitioners' Federal income tax for 1974. The deficiency resulted from respondent's disallowance of losses claimed by *191 petitioners arising from prepaid interest and loan points allegedly paid by Moreno Company One (Moreno 1), a California limited partnership in which petitioners held limited partnership interests. Background and Procedural History
Petitioners Wen Y. Chao and Ching J. Chao, husband and wife, filed a joint Federal income tax return for the calendar year 1974. At the time their petition was filed in this case petitioners resided in Palos Verdes Estates, California. In their petition filed February 3, 1983, petitioners alleged, inter alia, that respondent erred in determining the deficiency and in disallowing petitioners' share of the purported loss of Moreno 1 and that assessment and collection of the deficiency is barred because the period of limitations had expired. On April 26, 1984, respondent mailed to petitioners' counsel, John Patrick Kelly (Kelly), a proposed stipulation of facts and a proposed decision document and requested an informal *192 conference. Respondent advised Kelly that it was respondent's position that the case was controlled by Beck v. Commissioner,74 T.C. 1534 (1980), affd. 678 F.2d 818 (9th Cir. 1982), and that respondent intended to seek damages under section 6673. Kelly did not respond. On November 14, 1984, respondent served upon Kelly a request for admissions pursuant to Rule 90. In an accompanying letter, respondent reiterated his position with respect to Beck v. Commissioner,supra, and his intention to seek damages in favor of the United States. Petitioners did not respond, and the facts thus deemed admitted pursuant to Rule 90(c) include the following: Moreno 1 was 1 of 14 real estate limited partnerships promoted during 1974 by CAL-AM Corp. (CAL-AM) and its president, Joseph R. Laird, Jr. (Laird). [2]CAL-AM was the general partner of each partnership. *193 In December 1974, petitioners became limited partners in Moreno 1 by subscribing for 12 units of the partnership at $1,026 per unit for a total cost of $12,312. Total contributions to capital to Moreno 1 were $108,000, of which $102,600 (95 percent) was contributed by the limited partners, and $5,400 (5 percent) by CAL-AM. Petitioners held an 11.4 percent interest in Moreno 1. In December 1974, each of the partnerships purchased a portion of a 350-acre tract of land in Riverside County, California, from Go Publishing Co. (Go Publ.). At least 10 of these partnerships, including Moreno 1, acquired their tracts of land from Go Publ. on essentially identical terms. Moreno 1 purchased 8 lots from Go Publ. on December 30, 1974, for a total purchase price of $1,008,000. The 8 lots had a combined fair market value of $282,000 at the time of purchase. These lots had been acquired only days before by CAL-AM for $182,000; CAL-AM thereafter transferred the property to Go Publ. which, in turn, made the sale to the limited partnership. The terms by which Moreno 1 acquired the property from Go Publ. were as follows: An $8,000 cash downpayment; a $1 million nonrecourse promissory note *194 made by Moreno 1 in favor of Go Publ., secured by an all-inclusive trust deed; 12 months' prepaid interest on the note due on or before December 31, 1974, in the amount of $100,000; and loan points in the amount of $333,000. Pursuant to the loan arrangement between Moreno 1 and Go Publ., Moreno 1 wrote five checks to Go Publ. on December 27, 1974, and December 30, 1974, in the total amount of $441,000. This amount was allocated as follows: $8,000 as downpayment on the land purchased from Go Publ.; $100,000 for 12 months' prepaid interest; and $333,000 for loan points. Moreno 1 was able to write these checks because it "borrowed" $333,000 from J.E.C. Mortgage Corp. (J.E.C.), through a nonrecourse loan secured by a trust deed. J.E.C. was a California corporation with its principal place of business in Los Angeles, California. John E. Crooks (Crooks), an attorney who represented CAL-AM, Go Publ. and other entities controlled by Laird, was the sole board member and president of J.E.C. The $333,000 in funds resulted from a circular flow of checks, among Go Publ., J.E.C. and Moreno 1, and not from actual funds available to the partnership. Moreno 1 claimed a loss in the amount of *195 $433,000 on its 1974 partnership return. Petitioners claimed a loss in the amount of $49,362 on their 1974 Federal income tax return as their share of the Moreno 1 loss. In 1975, Moreno 1 sold for $1,520,000 the 8 lots to Bio-Science Resources, Inc. (Bio-Sci), a New Jersey corporation and an affiliate of CAL-AM. Bio-Sci assumed the $1 million obligation owed by Moreno 1 to Go Publ., and, in addition, gave Moreno 1 a promissory note in the amount of $520,000 secured by a trust deed on the 8 lots. The purchase by Bio-Sci occurred simultaneously with a reconveyance, or release, of the trust deed that had been recorded in favor of J.E.C. with respect to its nonrecourse loan to Moreno 1 in the amount of $333,000. Although the security interest was released, Moreno 1 did not pay off J.E.C.'s loan and did not recognize income as a result of the transaction. Respondent's Motions
On May 16, 1985, respondent filed a motion for summary judgment based primarily upon facts deemed to be admitted under Rule 90(c). Respondent also filed on that date a motion for damages in favor of the United States in the amount of $5,000 pursuant to section 6673. On May 30, 1985, respondent received *196 the original decision document, sent to Kelly over a year earlier, signed by Kelly and dated May 30, 1985. At the hearing on June 24, 1985, Kelly stated as follows: This was a case where I was retained by Mr. Chao to settle under the best position that I could obtain for him and I did not get an out-of-pocket offer from Mr. Kent when I sent in the settlement. I believe it was about a month ago. I sent the settlement in executed, the decision and then filed the motion to withdraw and sent that in to Washington, D.C. Subsequent I received another decision prepared from Mr. Kent's office requesting the $5,000 penalty damages on it which was beyond any authority I had and I never executed it and as far as I'm concerned I wasn't retained for any other purpose than to get a settlement which I did. * * * * * * I discussed the Beck case with Mr. Laird who was the promoter and a lawyer * * *. * * * from what he -- the information he gave me I felt that Dr. Chao would have had a fairly strong position except when I talked to him again about this and informed him that Mr. Kent was not going to allow the out-of-pocket damages because of Beck he said that he still wanted me to try and *197 get the out-of-pocket for him but he did not want to go to trial. That was the basis he retained me. Now, when I got the documents the counsel is referring to, the -- I forgot what it was in May of '84, I sent copies of all of this down to Dr. Chao and received no response. I called him subsequent to that and he said, no, he doesn't want to go to trial. He still wanted a settlement, the best settlement that I could get. Now, I talked to Mr. Kent several times during the past year on this. When the summary judgment motion was filed again I called for Dr. Chao and at this point I told him he was not going to get his out-of-pocket. So he said, well, just settle the case, and when I called Mr. Kent and told him that's what my client wanted to do he said, well, in your file you have a decision. Complete it and send it in, which I did. After that I was sent another document decision requesting the sanctions for this $5,000 penalty which I couldn't sign and I wasn't authorized for it, and also I'd completed what I was retained to do, get a settlement and I sent my motion to withdraw in. * * * * * * as far as the merits of the case I still believe that Dr. Chao had he gone to *198 trial would have won the case. THE COURT: But he had no intention of going to trial. MR. KELLY: He didn't authorize me to, that's -- I make that statement. Rule 121(b) provides for summary adjudication if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law. The burden of proving that there is no genuine issue of material fact is on the moving party. Adickes v. Kress & Co.,398 U.S. 144, 157 (1970); Espinoza v. Commissioner,78 T.C. 412, 416 (1982). Each matter contained in respondent's request for admissions is deemed admitted and conclusively established. Rule 90(c); Freedson v. Commissioner,65 T.C. 333, 335 (1975), affd. on another issue 565 F.2d 954 (5th Cir. 1978). Summary judgment may be granted on the basis of facts deemed admitted under Rule 90(c). Morrison v. Commissioner,81 T.C. 644 (1983). The facts relating to Moreno 1 are substantially the same as those relating to 2 of the *199 14 partnerships that we considered in Beck v. Commissioner,supra, known as Moreno Co. Two and Riverside Two. The legal principles governing the issues in this case and Beck are identical. In Beck, we concluded that the price paid by the partnerships for the property was inflated and that the loan arrangements did not give rise to bona fide indebtedness sufficient to support interest deductions. 74 T.C. at 1562. We held further that the arrangement for the payment of the loan points did not result in interest being "paid" within the meaning of section 163(a). 74 T.C. at 1565. The Court of Appeals in Beck v. Commissioner,678 F.2d 818 (9th Cir. 1982), affirmed our holding with respect to the lack of economic substance of the transactions, and found it unnecessary to address our alternative holding that the loan points were not "paid." On the basis of the deemed admissions, petitioners' failure to present any evidence to support their allegation with respect to the statute of limitations, their failure to oppose the motion for summary judgment, and the signed decision document, which we deem to be a concession by petitioners, *200 we conclude that there are no issues of material fact and decision may be entered for respondent as a matter of law as to the deficiency. Moreover, based on Kelly's statements and petitioners' nonaction in this case, we find that this proceeding was instituted and maintained primarily for delay in the hopes of obtaining a settlement not based on the merits, but on the necessity of litigating the case. Petitioners' positions were groundless because, as admitted by petitioners, the same issues were decided in respondent's favor in Beck v. Commissioner,supra, involving substantially the same facts. Petitioners made no attempt to factually or legally distinguish their case from Beck v. Commissioner,supra. They conceded the full amount of the deficiency only after respondent prepared the request for admissions and the motions for summary judgment and for damages and the Court set the motions for hearing. Hearing of the motions, and this opinion, required the Court to act in a case that petitioners never intended properly to prosecute. Accordingly, we award damages to the United States in the amount of $5,000. See Oneal v. Commissioner,84 T.C. 1235 (1985). *201 Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, and all rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Laird is a California attorney who has promoted other real estate shelters, as well as shelters involving coal, master recordings, motion pictures, and gemstones. See Moore v. Commissioner, 85 T.C.     (filed July 25, 1985, slip opinion at p. 3); Oneal v. Commissioner,84 T.C. 1235, 1242, n.10 (1985); Beck v. Commissioner,74 T.C. 1534, 1536 (1980), affd. 678 F.2d 818↩ (9th Cir. 1982).