ROBERT W. WILKEN AND ILLONA H. WILKEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wilken v. Commissioner
Docket No. 24882-84.
United States Tax Court
T.C. Memo 1987-272; 1987 Tax Ct. Memo LEXIS 272; 53 T.C.M. (CCH) 965; T.C.M. (RIA) 87272; June 2, 1987. *272 Ps established a trust in 1978 to provide for the college education of their children. Ps contributed $20,000 of savings certificates and $80,000 borrowed from a bank to the trust. Ps then borrowed $80,000 from the trust to repay their bank loan, and gave two $40,000 promissory notes to the trust. The notes did not provide for payment of principal until four months after termination of the trust on February 7, 1989. Held, the substance of the series of transactions in connection with the creation of the trust was the transfer by petitioners of their notes to the trust without consideration. Since no valid indebtedness was created, subsequent "interest" payments are not deductible under section 163(a), I.R.C. 1954. Robert S. Quinney, for the petitioners. Janine L. Hook, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined the following deficiencies in the Federal income taxes of Robert and Illona Wilken (hereinafter referred to as petitioners or individually as Robert or Illona): Year
Deficiency
1979
$3,098
1980
9,385
After a concession by petitioners, the issues before the Court are (1) whether the interest paid by petitioners on a purported debt to the Wilken Educational Trust (hereinafter referred to as the Wilken Educational Trust or the trust) is deductible under section 163(a); [1] and (2) if so, whether the income of the trust is taxable to petitioners under sections *275 674 and 677. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners resided in Eugene, Oregon, at the time the petition in this case was filed. On August 7, 1978, petitioners executed the Wilken Educational Trust Agreement. The trust income is to be paid for the education or benefit of any of petitioners' seven children. The trust agreement provides for the termination of the irrevocable trust upon the death of all the beneficiaries or upon the expiration of 10 years and 6 months (February 7, 1989), whichever occurs first. Upon termination of the trust, the principal is to revert to petitioners and the undistributed income is to be paid in equal shares to petitioners' children. Thus, petitioners established a short-term trust with a reversionary interest in the corpus. [2] The trustee is Andrew G. Iskra, a certified public accountant. *276 On August 7, 1978, Illona assigned her interest in two $10,000 savings certificates to the trust. On August 8, 1978, each petitioner obtained an unsecured, one-day bank loan of $40,000. The loans were repaid the next day. The $80,000 borrowed from the bank was contributed to the trust corpus. Petitioners then borrowed $80,000 from the trust. On August 9, 1978, each petitioner executed a $40,000 promissory note in favor of the trustee. No principal payments are due until June 15, 1989, which is four months after the scheduled termination of the trust. Petitioners, however, paid in full the two promissory notes on November 14, 1985 (a date following commencement of this action by petitioners). The promissory notes provide for interest at the rate of 10 percent per annum, which was the market rate of interest in August, 1978, but do not specify whether the interest is to be paid on the basis of a calendar year or the anniversary date of the notes. In point of fact, the interest payments as actually made coincided with the school year or educational needs of petitioners' children. [3] The promissory notes allow the prepayment of interest at any time. Petitioners made interest *277 payments of $2,666.67 in 1978, $6,000 in 1979 and $8,000 in 1980. Petitioners deducted these interest payments on their Federal income tax returns. On August 8, 1978, petitioners executed a mortgage on their residence in favor of the trustee to secure the payment of the promissory notes for $80,000. The mortgage was recorded on August 10, 1978. In August, 1978, petitioners' residence was subject to a deed of trust executed on April 21, 1969. The principal balance of the first trust deed was $34,007.67 on August 10, 1978. The assessed value of petitioners' house was $189,990 on January 1, 1978. Thus, the assessed value of petitioners' residence exceeded the sum of the balance of the first trust deed and balances of the two promissory notes secured by the second mortgage. Petitioners filed Federal Gift Tax Returns (Forms 709) for the taxable period ending September 30, 1978. Robert listed a gift of $40,000 to the *278 trust; he used $3,332.84 of his unified credit. Illona listed a gift of $60,000; she used $5,229.19 of her unified credit. The Wilken Educational Trust filed U.S. Fiduciary Income Tax Returns (Forms 1041) for the years 1978 through 1983. The trust paid no Federal income tax in any of these years. The income of the trust for the years 1978 through 1980 is reflected in the following table: Interest Payments
Year
Total Income [4]
Received from Petitioners
1978
$ 3,455.00
$ 2,666.67
1979
7,683.35
6,000.00
1980
9,657.71
8,000.00
Totals
$20,796.06
$16,666.67
All of the distributed income was used for the college educational expenses of petitioners' children. In 1979, the trust income was distributed in connection with the college education of two of petitioners' *279 seven children: Kathryn, who was born on July 25, 1959, and Kristen, who was born on August 18, 1960. In 1980, the trust income was distributed for the college expenses of Kathryn, Kristen and David, who was born on December 19, 1961. OPINION Reduced to its simplest terms, the central question in this case may be stated to be: were the several steps taken by petitioners in connection with the creation of the Wilken Educational Trust, namely, the borrowing of funds from the bank, the gift of the proceeds of the bank loan to the trust, the borrowing from the trust of the identical amount and the repayment of the bank loan, all within one 24-hour period, in substance steps in a single integrated transaction by virtue of which petitioners retained all the valuable incidents of ownership, control and enjoyment of the funds while making a semblance of a gift? If not, petitioners have effectively created a device by which they could deduct, for Federal income tax purposes, the cost of sending their children to college. The question above postulated requires us to determine whether the substance of the described transactions comports with their form. We stated the principle in the *280 following manner in Golsen v. Commissioner,54 T.C. 742, 754 (1970), affd. 445 F.2d 985 (10th Cir. 1971): It has repeatedly been held that the substance of a transaction rather than the form in which it is cast is determinative of tax consequences unless it appears from an examination of the statute and its purpose that form was intended to govern. * * * See also Perrett v. Commissioner,74 T.C. 111, 127 (1980), affd. without published opinion 679 F.2d 900 (9th Cir. 1982). Petitioners list the following factors as being indicative of a valid, enforceable debt: 1. The interest payments were made in cash. Cf. Beck v. Commissioner,678 F.2d 818, 821 (9th Cir. 1982), affg. 74 T.C. 1534 (1980). 2. Petitioners gave the trust a second mortgage on their home which was adequate security, since petitioners' equity in the home was in excess of the mortgage. 3. Petitioners paid a fair market rate of interest. 4. The trustee of the trust was "independent," not related to the grantors of the trust nor their employee. 5. The trustee testified at trial that he was not asked *281 prior to the trust's being established whether he would lend any money to the grantors. 6. The trustee was not obligated to lend money to petitioners and only did so because he received adequate security and a fair market rate of interest. By satisfying these requirements, section 675(3) was satisfied in that the grantors would not be treated as the owner of the trust. Notwithstanding the foregoing, we do not believe we are precluded from carefully weighing the surrounding circumstances and inherent probabilities to determine whether the substance of the transaction comports with its form. If what petitioners actually intended was the payment of tuition and other college bills for their children, then that is not what section 163(a) allows, which is the deduction of interest payments only on genuine indebtedness, and thus petitioners are not entitled to the deductions claimed. See Gregory v. Helvering,293 U.S. 465, 469 (1935); Glass v. Commissioner,87 T.C. 1087, 1175 (1986). Notwithstanding the factors listed by petitioners, we think the circumstances surrounding the inception of the trust permit inferences pointing in a direction away *282 from that which petitioners maintain. Petitioners hypothecate a series of events which, had they happened in the manner described, petitioners assert would convincingly have indicated a valid debt. Basically, petitioners suggest that a spacing out of the time elapsing between the various steps actually taken would have been convincing evidence of the genuineness of the overall transaction. The fact remains, however, that all of the initial steps of the transaction were accomplished almost simultaneously. The trust was executed on August 7, 1978. The two $40,000 notes to the Bank of the Northwest were signed on August 8, 1978. On the same day, petitioners executed a second mortgage on their residence in favor of the trust to secure payment of two promissory notes, each in the amount of $40,000, in favor of the trust. These promissory notes were executed on August 9, 1978, the same day on which petitioners repaid the August 8 bank loan. The trustee of the Wilken Educational Trust was Andrew G. Iskra, a certified public accountant. Iskra handled petitioners' tax affairs, having signed as preparer of their tax returns for a number of years, including the years in question, and *283 he was also, as indicated in the deficiency notice, petitioners' authorized representative before the IRS. He testified that he was not involved in setting up the trust. He also testified that he was not asked if he would lend funds to petitioners from the trust before the trust was established. However, by his silence, he also does not indicate that he had anything to do with negotiating the loan to petitioners at arms' length or otherwise. He simply stated that he had power under the trust instrument to make the loan and that the trust agreement required that there should be adequate security at "current interest rates." These facts, of course, emerge from the terms of the trust itself and do not reflect any particular activity on the part of Iskra other than passive acquiescence in the plan being implemented to make it possible for petitioners to deduct payments for their children's college education. By its terms, the trust is to terminate ten years and six months from August 7, 1978, or approximately February 7, 1989, at which time the trust principal reverts to petitioners, as grantors. The promissory notes, dated August 9, 1978, become due and payable on June 15, 1989, or *284 approximatley four months after the trust terminates. The fact that petitioners voluntarily prepaid the notes in 1985 after the inception of this case is of no significance. Petitioners place substantial reliance upon the case of Preston v. Commissioner,132 F.2d 763 (2d Cir. 1942), revg. 44 B.T.A. 973 (1941), for the reason that the facts surrounding the creation of a trust in Preston are similar to those in this case, and the Circuit Court reversed a decision of the Board of Tax Appeals holding for the Commissioner. We think an in-depth analysis of Preston and subsequent cases points us in the opposite direction from the one petitioners would like us to take. As stated, the facts surrounding the gift-loan back in Preston are similar to those in this case. On October 18, 1934, the taxpayer borrowed $125,000 from a bank and delivered that amount to a second bank, as trustee, to be held under a trust indenture for the benefit of a sister-in-law. The trustee was authorized under the trust indenture to lend that entire amount to the taxpayer on his bond. On the next day, October 19, 1934, the taxpayer delivered to the trustee his bond *285 under seal, in which he covenanted to pay $125,000 in 20 years with interest at four percent per annum. The trustee delivered $125,000 to the taxpayer, and the taxpayer used that amount to satisfy his loan from the first bank. On the above facts, the Board of Tax Appeals held that the only reasonable inference to be drawn from the various steps taken and the carefully drafted provisions of the trust indenture is that it was agreed between the taxpayer and the first bank that the $125,000 which he delivered to the trustee was to be returned to him almost immediately as a "loan." The payment to the taxpayer of money which he himself supplied to the trustee for the very purpose cannot be a loan to him or furnish consideration for his bond. The practical effect of what was done was to set up a trust composed solely of the taxpayer's bond. 44 B.T.A. at 977. The Second Circuit in Preston on appeal (speaking through Judge Swan) agreed with the Board that the "loan" by the trustee cannot be deemed consideration for the taxpayer's convenant to pay the trustee $125,000 on a specified future date, and four percent annual interest before maturity. The Circuit Court went *286 on to say that while there was no finding of an agreement by the trustee on receipt of the money to lend it immediately back to the taxpayer, that is the only reasonable inference to be drawn from the steps taken and the carefully drafted provisions of the trust indenture. The Circuit Court agreed that the surrounding facts created such an inference. Thus, the court held that "except for the seal," the settlor never lost control of the sum he turned over to the trustee. (Emphasis supplied.) 132 F.2d at 765. The Second Circuit reversed the Board, however, because under the law of New York at the time the note was given, the seal affixed to the bond conclusively imported a consideration under New York law. In Linder v. Commissioner,68 T.C. 792, 796 n.4 (1977), we noted that "In the intervening years, the holding in the Preston case has been displaced by a modification of New York law. N.Y. Gen. Constr. Law sec. 44a (McKinney Suppl. 1977)." We stated that "Since in most jurisdictions a promissory obligation executed as a gift is not legally enforceable, any interest paid on such an obligation is not deductible." (Fn. *287 ref. omitted.) 68 T.C. at 796. In Linder, we held that where a taxpayer, a New Jersey resident, executed gratuitous promises under seal to pay certain sums to his sister and thereafter paid and deducted interest on the promised amounts, the interest paid was nondeductible because under New Jersey law the sealed promises were unenforceable. We believe the same result would be reached under Oregon law. In Kirchner v. Clostermann,136 Or. 557, 562, 299 P. 995, 996 (1931), the Supreme Court of Oregon held that gifts which are nothing more than donor's own naked executory promise to pay at some further date, without any consideration to support it, are voluntary promises which cannot be enforced against the donor. This substantive rule, being the state law rule applicable to the notes in question (as enunciated by the Oregon Supreme Court, the highest court of that state), is the rule we apply in this case. Commissioner v. Estate of Bosch,387 U.S. 456, 467 (1967); see also Estate of Paxton v. Commissioner,86 T.C. 785, 803 (1986). The net effect, then, of the series of transactions surrounding the creation of the *288 trust is that petitioners made transfers to the trust of their own notes which are unenforceable under state law either by the trustee or by the trust's beneficiaries and are no more then promises to make gifts in the future. Preston v. Commissioner, 44 B.T.A. at 973. As a consequence, the so-called interest payments are nondeductible under section 163(a) and are, in reality, nondeductible gifts to petitioners' children. Petitioners attempt to analogize this case to a gift-lease back involving a trust as exemplified in Wolfe v. Commissioner,T.C. Memo. 1984-446. The analogy is far from exact. As respondent correctly points out, rent, when deductible, is deductible under section 162(a), whereas the interest deduction section is 163(a). Deductibility under either section is determined by separate criteria. The significant fact, however, insofar as this case is concerned is that under either section the obligation to pay, whether rent or interest, must be enforceable. Here, it is not. In Elbert v. Commissioner,45 B.T.A. 685, 690 (1941), the Board characterized a device similar to that of the instant case in the following manner: *289 Since it was intended from the start that the fund should be transferred back to petitioner, under the terms set out, no real gift occurred. The trust was merely a convenient conduit, and petitioner in effect is claiming a deduction for interest on money "loaned" to herself. [Citations omitted.] We think this statement accurately describes the situation here. See also Perrett v. Commissioner,74 T.C. at 134. Since we hold that no enforceable debt was created, we need not address petitioners' arguments that the trust met various tests for valid "Clifford trusts" under Subpart E, Subchapter J, Subtitle A, of the Internal Revenue Code. Likewise, since we hold for respondent on the interest deduction issue for the reasons stated, we need not address his alternative arguments. Petitioners have raised no other issues. Accordingly, Decision will be entered for the respondent.
Footnotes
1. Except as otherwise noted, all section references are to the Internal Revenue Code in effect for the years in issue.↩
2. Prior to amendment by section 1402(a) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2711-2712, section 673(a) treated a trust grantor as the owner of any portion of a trust in which he had a reversionary interest in either the corpus or income if the interest would or was reasonably expected to take effect in possession or enjoyment within 10 years commencing with the date of the transfer of that portion of the trust. Thus, unamended section 673(a) indirectly authorized so-called "Clifford trusts," i.e., trusts with a reversionary interest in the grantor and a specified duration of 10 years or more.↩
3. Regardless of whether the interest was payable on a fiscal or calendar year, an annual interest rate of 10 percent on $80,000 yields $8,000 per year, or $666.67 per month. Petitioners incorrectly state that the amount of accrued interest per month is $657.↩
4. In addition to the interest income paid by petitioners, the trust received interest income upon the maturity of the savings certificates assigned to the trust by Illona. After the maturity of the savings certificates, the trust received interest income from the banks or money market accounts in which the trusts funds were deposited or invested.↩